392 So.2d 436 (1980)
STATE of Louisiana
v.
Macedonia TURNER.
No. 67796.
Supreme Court of Louisiana.
December 15, 1980.
Rehearing Denied January 26, 1981.
*437 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., A. Zach Butterworth, Asst. Dist. Atty., for plaintiff-appellee.
Cora R. Schley, Gravel, Schley & Van Dyke, Alexandria, for defendant-appellant.
BLANCHE, Justice.
Defendant, Macedonia Turner, was arrested on January 17 at the Louisiana State Penitentiary in Angola, Louisiana and subsequently indicted by a West Feliciana Grand Jury for the crime of introducing contraband into the prison in violation of R.S. 14:402. Defendant's Motion to Suppress the Evidence (valium pills) was denied by the trial court, and the case proceeded to trial. Thereafter, defendant was found guilty as charged by a twelve-person jury. Defendant filed a Motion for Arrest of Judgment alleging R.S. 14:402 was unconstitutional, which was denied. Defendant timely filed a Motion for a New Trial on the basis of newly discovered evidence, i. e. a prescription for the valium, but the motion was withdrawn and the defendant was sentenced to two years at hard labor. The case is now before us on appeal.
*438 On January 17 the defendant, her daughter-in-law and a minor son of the defendant went to the state penitentiary at Angola to visit two of the defendant's sons who were incarcerated there. Defendant had been making this same trip twice each month for the preceding 1½ years and, on this visit, parked outside the main gate and boarded the bus for a two-mile trip to Camp A's visiting room. According to the defendant and her daughter-in-law, on a previous visit, the contents of their purses were stolen when they left them inside their parked car. Since purses were not allowed in the visiting room, the two women sought to solve the problem on this trip by removing the valuables from their purses and taking them into the prison on their persons by concealing them in their brassieres.
Defendant testified she also removed her valium medication from her purse, wrapped it in some tinfoil, and placed it in her brassiere. Defendant's story is contradicted by the two female prison employees who conducted the searches of the two women prior to their admission to the visiting room. They testified the daughter-in-law was not wearing a brassiere that day, and the defendant had her money and identification in her small, wallet-sized purse and only the 13 valium pills were concealed in her brassiere.
Defendant testified that she is a diabetic with high blood pressure, hypertension and migraine headaches, and that she regularly takes blood pressure medicine, insulin twice daily, and valium medication three times daily, all in accordance with a doctor's prescription. Although defendant testified that she always kept all of her medication with her at all times, on that particular day, she was out of all her medical supplies except the valium pills.
Upon arriving at the visiting area, the defendant was conducted to a private room where, in the presence of the two female prison employees, she was requested to remove her clothing. This special request was made because Thomas Guerin, a Criminal Investigator with the Department of Corrections, had requested of the visiting room personnel that all persons visiting the Turner brothers be thoroughly searched. Likewise, the defendant's daughter-in-law was searched.
Defendant testified that when told of this request, she promptly complied and stated that all she had was her money and pills, which she willingly gave the employees. The two female prison employees contradicted this, saying that while she voluntarily removed her outer garments, that it took three requests to persuade her to slide her brassiere above her breasts. When she finally did so, the valium pills were the only item found and they were in two separate tinfoil wrappings on each side of her brassiere. Defendant was then arrested for introducing contraband, as the pills were found to be diazepam, commonly known as valium.
Defendant appeals her conviction on the basis of five assignments of error.

Assignment of Error Number 1
Defendant contends the trial court erred in refusing to suppress the valium seized pursuant to the search of her person conducted by the female prison employees. Unreasonable searches and seizures are prohibited by the Fourth and Fourteenth Amendments to the United States Constitution, and by the Louisiana Constitution of 1974, art. 1, § 5. A search conducted without a warrant is per se unreasonable unless it falls within one of the specifically delineated exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Williams, 366 So.2d 1369 (La.1978). One of these exceptions is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Morris, 340 So.2d 195 (La.1976).
Defendant knew she would be searched when she went to visit at Angola, for she testified on direct examination:
"Q. Are you aware of signs existing at Angola about searches?
A. Well, when I would go in, they would search my little purse. This little purse.
*439 Q. This would be a normal occurrence for you then?
A. Yes.
Q. Whenever you would go to Angola?
A. Yes.
Q. You would expect to be searched when you went to Angola?
A. Yes.
Q. How many times in the past had you been searched?
A. Well, we would be searched every time we would go over there. They search your purse."
Defendant's daughter-in-law confirmed this expectation of being searched when she testified on direct examination:
"Q. Have you seen any signs outside the entrance?
A. Yes, sir.
Q. What do these signs say?
A. You are liable to be searched at any time upon entering these grounds."
Besides knowing that she was subject to be searched upon entering Angola, the defendant clearly consented to this search as she testified on direct examination:
"Q. Once you were asked to be searched, what was your procedure than?
A. I told her okay. I said I got my pills and my money."
Though the two female prison employees disagreed with the defendant's candor about her pills, they did agree with her that she consented to the search.
In State v. Pitts, 263 La. 38, 267 So.2d 186 (1972), we said:
"This Court can take notice of the unique problems prison authorities have in preventing contraband from reaching the hands of the prison population. In order to maintain prison security, certain measures must be taken to insure the visitors to the prison do not smuggle contraband articles to the inmates. Persons who wish to visit prisons must therefore realize that their persons are subject to search if they intend to enter the prison confines."
Defendant not only realized she might be searched in order to visit her sons in Angola, but she consented to this search. Thus, the search that produced the valium was conducted pursuant to a valid search warrant exception.
This assignment of error is without merit.

Assignment of Error Number 2
Defendant contends the trial court erred in permitting a witness, Jerry Harrison, to testify as to procedures within the state crime laboratory over the objection of the defense counsel.
Mr. Harrison has a B.A. in chemistry and biology; had attended a course for drug enforcement administration in Washington, D.C.; had attended the FBI school; had attended many seminars at the crime lab during various scientific association meetings; and had been working at the crime lab for the last eight years identifying narcotics and dangerous substances. He was tendered by the state as an expert and after some defense questions he was recognized by the court as an expert.
Later in the trial, as the state was establishing the chain of custody of the pills from the search of the defendant to the courtroom, Mr. Harrison was testifying as to the usual procedure the crime lab followed when the drugs to be tested were received. The defense objected and the state responded that the procedure was clearly within his knowledge. The defense argued that Mr. Harrison's position at the crime lab was the actual analysis of chemicals and substances, not administrative duties. The trial court overruled the objection and let Mr. Harrison testify as to the crime lab policies. Later, on cross-examination, the defendant asked:
"Q. You would not be in a position to see the paper work that occurs where the drugs are delivered?
A. Well, we are all subject to being called at any time to check material into the evidence room. Grace was called that day because she was handy. Anybody that's handy, like myself, can be called up to sign and *440 inspect material and place it into the evidence room."
The defendant made the same objection, which the court overruled.
Defendant's argument appears to be that if this testimony had not been allowed the chain of custody would have been broken and the evidence not admitted. We believe the procedure of the crime lab was well within the knowledge of Mr. Harrison for, besides analyzing drugs, he had often accepted evidence in the crime lab and he certainly knew the procedure.
In this case, the state did identify the valium pills as those taken from the defendant by the chain of custody; that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). The defendant does not contest the chain of custody in any regard, except for alleging Mr. Harrison should not have been allowed to testify as to the crime lab procedures. We find he could properly do so and was not a broken link in the complete chain of custody.
This assignment of error is without merit.

Assignment of Error Number 3
Defendant contends the testimony of Tom Guerin, Criminal Investigator with the Louisiana Department of Corrections, was so prejudicial in its repeated use of hearsay evidence over the strenuous objection of defense counsel as to constitute manifestly reversible error.
On direct examination the assistant district attorney instructed Mr. Guerin several times to testify to things within his own knowledge without saying what someone else had told him. Nevertheless, in response to questions from the assistant district attorney, Mr. Guerin made several supposedly hearsay statements in the jury's presence. Finally, the following dialogue took place:
"Q. Mr. Guerin, without saying what someone told you, if you received the report, the action you did as a result of that report?
A. I received a report that possibly the Turner brothers were receiving contraband of some type of drugs during a visit.
BY THE COURT:
Wait a minute.
DEFENSE COUNSEL:
I object. It's highly prejudicial and may we approach the bench please?
Whereupon the trial judge admonished the jury to disregard the response. The defense objected to the admonishment saying it was not sufficient to relieve the prejudice, and moved for a mistrial. The court overruled the motion for a mistrial and again admonished the jury to disregard the response.
Hearsay information is inadmissible in criminal trials. R.S. 15:434; State v. Jacobs, 344 So.2d 659 (La.1976). However, Mr. Guerin's testimony concerning the information he received was not offered to prove the truth of that information but, rather, to show his reason for ordering a search of all of the Turner brothers' visitors. Therefore, this testimony was not hearsay. State v. Martin, 356 So.2d 1370 (La.1978); C. McCormick, Evidence, § 249 (Cleary Ed. 1972); Pugh, Louisiana Evidence Law, p. 429 (1974).
This Court has held in situations similar to the present that the witness is limited to a statement that he took a particular action as a result of the information received and that it is not proper to allow the witness to testify concerning the conclusions of the informer that the defendant was guilty of a crime. State v. Murphy, 309 So.2d 134 (La.1975). Here, the assistant district attorney properly limited Mr. Guerin to answering what actions he took for, after the admonishment, he questioned the witness as follows:
"Q. Mr. Guerin, do you have any direct knowledge concerning the facts that you were speaking about earlier that are just within your own knowledge, not from what anyone else has told you.
*441 A. No, sir, I don't have any direct knowledge.
Q. But apparently as a result of something, you asked that a search be conducted, is that correct?
A. Yes, I did."
Once Mr. Guerin testified that he ordered the searches because of reports concerning the Turner brothers receiving contraband, his testimony was complete. Mr. Guerin did not testify, nor was he asked to do so, as to the conclusions of any informer as to the present defendant's involvement in the crime. Murphy, supra.
This Court has noted that a police officer who, during the trial, continuously makes reference to inadmissible evidence should not be held to a lesser standard than judges or prosecutors. State v. Schwartz, 354 So.2d 1332 (La.1978), footnote 2. This footnote indicates our previous determination is erroneous that a police officer is not a "court official" whose reference to inadmissible other crimes evidence mandates a mistrial under C.Cr.P. art. 770. State v. Hegwood, 345 So.2d 1179 (La.1977); State v. Hardy, 344 So.2d 1018 (La.1977). We need not address this issue of whether Mr. Guerin, an experienced law enforcement officer, was a "court official", for unlike the officer in Schwartz, he did not refer to inadmissible other crimes committed by the defendant in violation of C.Cr.P. art. 770(2).
In accordance with C.Cr.P. art. 771, the trial judge felt the remarks made by Mr. Guerin were prejudicial to the defendant and admonished the jury to disregard them. It should be noted the defense counsel did not then complain that the remarks were hearsay or a reference to inadmissible other crimes; rather, he alleged they were prejudicial. The trial judge agreed that they were prejudicial enough to warrant an admonishment, but not enough to declare a mistrial. We see no abuse of discretion in this situation.
This assignment of error is without merit.

Assignments of Error Numbers 4 & 5
Defendant contends that the motion in arrest of judgment should have been granted, and that her conviction should be reversed because R.S. 14:402(A) is an unconstitutional statute.
Though the predecessor to R.S. 14:402 was held constitutional in State v. Morgan, 238 La. 829, 116 So.2d 682 (1960), its wording was substantially revised by Acts 1976, No. 241, § 1, amended by Acts 1977, No. 326, § 1; Acts 1978, No. 731, § 1; and this Court has not had an occasion to rule on its validity.
Defendant challenges the present statute on the following grounds: vagueness, insufficient notice to the defendant as to what acts are proscribed, and delegation of too much of the legislative function of what is criminal to the authorities operating the prison facility.
The United States Supreme Court has held that a party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights; and, as a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. County of Ulster v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). We have adhered to this position by saying that only a person whose rights are injuriously affected by those provisions of the law sought to be declared unconstitutional can be heard to challenge the constitutionality thereof. City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974); State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (La.1949).
We need not address the defendant's contentions concerning R.S. 14:402(A), for she was not convicted of the allegedly vague definition of contraband that she complains of; therefore, she has no standing to argue its constitutionality. Rather, her behavior fell squarely within the portion of the statute that states:
"Contraband includes but is not limited to any substance or device defined in the *442 Uniform Controlled Dangerous Substance Law, except where prescribed by a physician."
Valium is a substance included in the Uniform Controlled Dangerous Substance Law, R.S. 40:964, Schedule IV(A)(17), and it was not prescribed to the Turner brothers.
The defendant is not adversely affected by the portions of R.S. 14:402 that she considers unconstitutional; therefore, she lacks the standing to challenge it. Instead, she was convicted of violating that portion of the statute that clearly dictates her behavior was illegal and she has not presented a valid argument to us to render this definition of contraband unconstitutional.
These two assignments of error considering the constitutionality of R.S. 14:402 are without merit.
For the above reasons, the five assignments of error made by the defendant are without merit, and the defendant's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., dissents. The police officer's remarks were inadmissible other crimes evidence.