459 So.2d 1189 (1984)
STATE of Louisiana
v.
Melvin LARD.
No. KA-1432.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1984.
Rehearing Denied December 27, 1984.
*1191 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joanne C. Marier, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State of La.
Kerry Cuccia, M. Craig Colwart, New Orleans, for defendant-appellant, Melvin Lard.
Before SCHOTT, WARD and BYRNES, JJ.
WARD, Judge.
Melvin E. Lard was convicted of possession with intent to distribute heroin, and sentenced to life imprisonment without benefit of probation or suspension of sentence. Lard appeals, arguing assignments of error on seven issues. We do not find merit in any of Lard's arguments and we affirm.
Lard first contends that he was arrested without probable cause and the evidence seized incidental to that arrest and the statement he made to police after it cannot be used as evidence against him. Consequently, he argues the Trial Judge erred in denying motions to suppress.
As a general proposition, there is probable cause to arrest when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information would justify a man of average caution in believing that the person to be arrested has committed or is committing an offense. State v. Collins, 378 So.2d 928 (La.1979). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the totality of the circumstances establish a basis both for the information and the informant's reliability. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Manso, 449 So.2d 480 (La. 1984).
During the hearing on Lard's motion to suppress, Bruce Adams, the arresting officer, testified that a confidential informant with whom he had worked for years and whose information had led to convictions in the past telephoned him around 6:30 p.m. on October 5, 1982. The informant stated that he had overheard a conversation about a very large heroin transaction that was going to take place between 10:30 and 11:30 that evening in the neighborhood of Clio, Thalia and Baronne Streets in New Orleans and that the person delivering the drugs would be wearing white tennis shoes, red jogging pants, a white tee shirt, and a red and white polka dot welder's cap, and carrying a purple Crown Royal sack and that he would be driving an old faded blue four-door Chevrolet.
Two plain clothes police officers went to the described location and mingled with the crowd on the streets and sidewalks of the neighborhood. The officers recognized an unusually large number of known drug dealers on the street. Lard soon arrived on the scene, driving an old faded blue Chevrolet and fitting the informant's description in every detail. At that point, although there may not have been probable cause to arrest Lard, the officers had reasonable suspicion to stop and question him. La.C.Cr.P. art. 215.1(A). As the officers approached Lard and identified themselves, he quickened his pace and tried to toss aside the Crown Royal sack he was carrying. Because of this suspicious behavior, the officers asked Lard what was in the bag. He replied, "Dope ... heroin." Lard was then arrested.
Lard argues these facts are insufficient to constitute probable cause to arrest and in support his argument he relies on the recent Louisiana Supreme Court opinion in State v. Ruffin, 448 So.2d 1274 (La. 1984). In Ruffin, an informant told a police detective that a person was standing on a certain street corner in Baton Rouge, attempting to get someone to help him cash a stolen check. Ruffin was found in the described location and arrested. The sole basis for Ruffin's arrest was his presence on the corner where the informant said he would be. The Court said, "that fact alone does not indicate that the defendant was engaging in any illegal activity such as *1192 would furnish probable cause for an arrest." 448 So.2d at 1278. Admittedly, there are similar facts in this case: the officers were prompted by a tip from an informant to go to the scene where they observed a suspect fitting the description given by the informant. There are important differences, however. In this case, Lard was not arrested merely because of his presence in a described location. There were several known drug dealers present with Lard at the described location, and he was not arrested until he attempted to evade the police and began to throw down the Crown Royal sack.
La.C.Cr.P. art. 201. Arrest defined
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
Thus, even if the officers intended to arrest Lard from the beginning, and even if "an arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of an accused", Ruffin, 448 So.2d at 1279, there must be an actual restraint of the person to constitute an arrest. Here, there was no actual restraint of Lard's person until the police grabbed his arm, preventing him from throwing the Crown Royal bag, and at that point, probable cause had arisen.
Hence, we find there was probable cause for Lard's arrest and hold that the Trial Judge was correct when he denied the motion to suppress evidence of the cash, the heroin, the Crown Royal sack, and Lard's statement that the sack contained heroin.
Lard additionally complains that the Trial Judge erred when he denied Lard's motions for a mistrial which he claims was warranted by references in the presence of the jury to allegedly inadmissible hearsay evidence. During the prosecutor's opening statement he informed the jury that one of the arresting officers would testify that he received confidential information from an informer, describing the defendant's clothing, his automobile, and the bag containing narcotics, and that this information led the officers to the scene where the defendant was arrested. During trial, the arresting officer was permitted to testify as to what the confidential informant told him. The content of the informant's tip in each of these instances was not hearsay, offered as proof of the truth of the matter, that is, that Lard was in fact engaged in drug trafficking. Rather, the information was offered and admitted to show the state of mind of the officers, and more particularly, the reason the officers went to the scene. State v. Calloway, 324 So.2d 801 (La.1975). The information is therefore not hearsay, and reference to it during trial is not grounds for a mistrial.
Lard next argues that the Trial Judge erred when he qualified Officer Rudolph Fazzio of the New Orleans Police Department as an expert witness, and when he permitted him to testify concerning packaging of heroin for sale. Lard contends that Fazzio did not have training or special knowledge of heroin packaging, but only knowledge and experience of drug use generally, therefore he was not qualified to testify as an expert in the use and sale of heroin.
Before Officer Fazzio was permitted to testify as an expert in the packaging, use and distribution of heroin, the State established that Officer Fazzio had been working for the Narcotics and Drug Abuse Section of the New Orleans Police Department for three years. He had worked under cover for approximately a year, living and associating with heroin users and dealers. During that time, he had observed the use and sale of heroin and had himself purchased heroin. He had received instruction from experienced New Orleans Police narcotics officers and he had taken a United States Drug Enforcement Agency course, as well as attending and giving lectures on the subject.
We do not believe the Trial Judge erred when he permitted Fazzio to testify as an expert. Whether a witness is qualified *1193 as an expert is within the sound discretion of the Trial Judge, whose ruling that a witness is qualified as an expert will not be reversed unless it is clearly wrong. In this case, it was not.
Lard next complains that Officer Fazzio, while testifying as an expert about common practices among dealers and users of heroin, gave a brief, but somewhat graphic description of the technique for injecting heroin, which inflammed the jurors. Lard contends that this testimony was irrelevant.
We agree that its relevance is marginal, at best. However, even though expert testimony should be limited to the issues before the jury, it must be excluded only if its prejudicial effect outweighs its probative value. The Trial Judge has great discretion in evaluating the relevance of evidence and its potential effect upon the jury. In determining whether he abused that discretion, an appellate court must look at the allegedly prejudicial evidence as part of the entire record. Reversible error will be found only where, in light of all the evidence, there is substantial prejudice to a defendant. State v. Humphrey, 412 So.2d 507 (La.1982).
In this case, it was not strictly necessary for the state to present evidence concerning the methods of ingesting heroin. However, we find the error harmless as the overwhelming weight of the evidence demonstrated Melvin Lard's guilt.
Lard's next assignment of error complains of specific opinion testimony which Officer Fazzio was permitted to give. In order to establish Lard's possession with intent to distribute heroin, Officer Fazzio testified extensively and in detail concerning the techniques of illegal heroin use and distribution. Near the end of his testimony, the following exchange took place:

EXAMINATION BY MR. WHITTAKER [for the State]
Q In your experience are dealers usually users of heroin?
BY MR. CUCCIA:
Your Honor, I'm going to object. That's irrelevant.
BY MR. WHITTAKER:
I think it's relevant, Your Honor.
BY THE COURT:
Overruled.
BY MR. CUCCIA:
Note my objection for the record, please.
BY THE COURT:
You can answer that.
A A person that would deal this much heroin or more than that or less than that would not be a user of heroin.
EXAMINATION BY MR. WHITTAKER:
Q He is usually not?
A Usually not a user of heroin.
Q Are junkies usually regular dealers of heroin?
A No sir.
[Tr. at pp. 187-188]
Lard argues that Officer Fazzio's opinion, coupled with the evidence of 277 packets of heroin found on Melvin Lard, implies that it is the officer's opinion that Lard is a dealer, not a user of heroin. Intent to distribute is, of course, an ultimate issue in the case, to be decided by the jury. Lard contends that the opinion which Officer Fazzio was permitted to express was a substantial factor in the jury's decision to convict, thus constituting reversible error.
The resolution of this contention requires an understanding of the proper roles of the expert witness and the jury. The purpose of an expert witness is to provide the jurors with a basis of knowledge, background information on the subject in issue not generally possessed by the public at largeknowledge the expert has gained through his specialized training or experience. The role of the jury is that of ultimate fact finder: the jurors relate the background knowledge imparted by the expert to the facts established by the evidence at trial and make a determination of the defendant's guilt. The ultimate issue of guilt is to be decided by the jury, not by the expert witness. It is error for an expert witness to be permitted to testify beyond *1194 the scope of background knowledge and to express an opinion regarding whether illegal activity took place. An expert's opinion on an ultimate fact is particularly prejudicial where the expert is one, such as an experienced police officer, in whose opinion the jurors would place great confidence and respect.
Lard relies upon two recent cases in which the Supreme Court found reversible error because narcotics officers, qualified as experts, gave opinions concerning ultimate facts to be decided by the jury. State v. Montana, 421 So.2d 895 (La.1982); State v. Wheeler, 416 So.2d 78 (La.1982). In each of those cases, the expert witness, under examination by the State, was given a detailed fact situation identical to the facts of the case under consideration, and in each case the expert testified that on the "hypothetical" facts, he believed that narcotics were being distributed. The Supreme Court found the officers' opinions to be improper expert testimony, an impermissible usurpation of the jury's role, and reversed each conviction.
We distinguish the testimony in Montana and Wheeler from that here. Unlike the expert witnesses in Montana and Wheeler, Officer Fazzio made a common-sense observation, background information properly given by an expert witness. Unlike the testimony in Montana and Wheeler, Officer Fazzio's testimony was general in nature, not given in response to a "hypothetical" fact situation identical to that of the defendant. Had the prosecutor given Officer Fazzio the facts of Melvin Lard's case and then asked, "What would be your opinion?", the rule in Montana and Wheeler would apply. However, we find the rule in those cases inapplicable to the testimony in this case and consequently conclude there is no reversible error. This conclusion is in agreement with our recent opinion in State v. Barber, 445 So.2d 463 (La.App. 4th Cir.); writ denied 446 So.2d 1224 (La.1984).
The next assignment of error alleges that the State did not prove the element of "intent to distribute", hence the Trial Judge should have granted Lard's motions for a new trial or a post verdict judgment of acquittal. Lard asserts that proof of mere possession of a large quantity of drugs alone is insufficient to support a conviction for possession with intent to distribute. This is true. However, the proof of Lard's possession of 277 packets of heroin did not stand alone. The State also presented evidence that the packets were in bundles of about 25 packets each, that Lard was carrying $324.00 in cash along with the heroin, that he was carrying the heroin in a bag on the street and was not in a place where an addict might be expected to use heroin, that he did not have paraphernalia for use of heroin, nor was there any evidence tending to show that Lard intended to use, rather than distribute, the heroin. From this evidence of the circumstances surrounding Lard's possession, we find a clear and reasonable inference of intent to distribute, proven beyond a reasonable doubt.
Lard's final contention is that the sentence of mandatory life imprisonment without benefit of probation or suspension of sentence provided by La.R.S. 40:966B(1) constitutes cruel and unusual punishment in violation of his constitutional rights because it is disproportionate to the crime. We note that those convicted and sentenced under this statute are impliedly subject to parole and pardon, and we agree with the Fifth Circuit Court of Appeals which upheld as constitutional an earlier version of the statute. Terrebone v. Blackburn, 646 F.2d 997 (5th Cir.1981).
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.