533 So.2d 1242 (1988)
STATE of Louisiana
v.
Paul GRAY.
No. KA-9246.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1988.
Concurring Opinion September 30, 1988.
Rehearing Denied December 14, 1988.
*1244 William J. Guste, Jr., Atty. Gen., Darryl W. Bubrig, Sr., Dist. Atty., Pointe-A-La-Hache, Gilbert V. Andry, III, Asst. Dist. Atty., New Orleans, for the State of La.
Terry W. Sercovich, Indigent Defender Bd., Belle Chasse, for Paul Gray.
Before WARD, WILLIAMS and PLOTKIN, JJ.
WARD, Judge.
A Plaquemines Parish grand jury indicted Paul Gray on four counts of aggravated rape. A jury found Gray guilty of raping three of his children, aged six to ten years. The Trial Judge sentenced Gray to life imprisonment at hard labor without benefit of *1245 parole, probation or suspension of sentence on each count, with the sentences to run consecutively. Gray appeals his conviction. Finding no merit in Gray's seven assignments of error, we affirm.
In January 1984, the Louisiana Department of Health and Human Resources began an investigation of the Gray family after receiving complaints of physical abuse and neglect. Kerry Ermon, a social worker, visited the home and met with Gray and his wife many times during 1984. Upon confirming signs of physical abuse, neglect and severe marital problems in the family, Ermon set a court hearing in October 1984 to determine whether the children should be removed from the parents' custody. Mrs. Gray did not appear at the hearing because she had moved the children to Idaho to stay with their paternal grandparents after, as she testified, discovering Gray attempting to have sexual intercourse with their daughter.
Mrs. Gray left the children in Idaho, came back to Louisiana, divorced Gray and later remarried. The children were eventually placed in foster homes in Idaho, the daughter in one home, two sons in another. In January 1985 the children revealed to their foster parents that Gray had forced them to have anal and vaginal intercourse with him and each other. The foster parents notified the Idaho Department of Health and Welfare of the accusations, and in early February 1985 the Department video-taped interviews of the children who described how Gray raped them.
In addition to Gray's former wife, the State's witnesses at trial were the Louisiana social workers, the Idaho foster parents and Gray's three children. Gray also testified, denying all charges and speculating that the charges were the result of a vendetta against him by his former wife.
Kerry Ermon testified that although she never suspected sexual abuse in the Gray family and therefore did not request that the children undergo vaginal or rectal physical exams, she felt that it was not unusual for her not to have learned of the sexual abuse because her visits to the Gray home were periodic and brief. The foster parents' testimony indicated that even before the children revealed the incidents, they suspected that the children had been sexually abused because of several occurrences beginning soon after the children arrived in their homes.
Sue Forrest, the foster mother of Gray's only daughter, stated that the daughter's behavior alerted her to possible abuse. Forrest observed that the young girl had an inappropriate need to be noticed by the young boys in the household and also suspected that the girl had played sexually with an infant in the household. Forrest took her to a pediatrician for urine leakage. The doctor diagnosed a probable chance of intercourse and advised Forrest to take her to a gynecologist.
David Doten, the foster father of two of Gray's sons, stated that many incidents involving the boys' behavior caused him to suspect sexual abuse from the first night the boys stayed at his house. He reported observing a great amount of inappropriate sex play and the use of language unusual for young children. He stated that the boys' drawings often contained sexual themes.
Over defense objections, the videotaped interviews of the children were shown to the jury. During the interviews the children used anatomically correct dolls and drawings to demonstrate what their father did to them. In the interviews, each of the children clearly verbalized and described the acts which they were routinely forced to perform, including vaginal, anal and oral sexual acts. After the tapes were shown to the jury, each child testified and expressed his or her knowledge of the difference between being truthful and lying. Each stated that he was telling the truth in court and had told the truth in the interviews and, each was declared competent to testify.
First Assignment of Error
Gray argues the Trial Court incorrectly overruled five of his challenges for cause during jury selection. Because Gray exhausted his peremptory challenges, we will consider his complaints. State v. Smith, 430 So.2d 31, 38 (La.1983). He complains *1246 that five jurors were impartial or biased, either because they were familiar with the Gray family, a district attorney or a policeman, or because someone in their family was involved in a rape case.
La.C.Cr.P. art. 797(2) & (3) provides:
The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
. . . . .
The Trial Court should sustain a challenge for cause if a prospective juror's answers reveal facts from which bias, prejudice or inability to follow the law may be reasonably implied, despite the juror's professed impartiality. State v. Smith, supra. However, when a prospective juror volunteers an opinion apparently prejudicial to the defense, but on further inquiry demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Heard, 408 So.2d 1247 (La.1982). The Trial Judge has broad discretion in ruling on a challenge for cause and his ruling should not be disturbed on appeal without a showing of arbitrary or unreasonable abuse of that discretion. State v. Celestine, 443 So.2d 1091 (La. 1983); cert. den. Celestine v. Louisiana, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984).
Gray first complains of the overruling of his challenge of John Toney, the principal at the children's school in Louisiana. The colloquy between the Court, the attorneys and Toney revealed Toney knew the Gray family and was aware of an investigation into possible physical abuse of the children, but had no knowledge of the result of the investigation, nor was he ever aware of possible sexual abuse. Furthermore, Toney's responses clearly showed his willingness and ability to be an unbiased, impartial juror and to make a decision based only on the law and the evidence.
Although Toney knew something about the case, fundamental fairness does not require that jurors be totally ignorant of the case if they can set aside their impression of guilt or innocence and render a verdict on the evidence presented in court. State v. Harper, 430 So.2d 627 (La. 1983). In cases where a juror has read or heard about a case, it is usually incumbent upon the defendant "to demonstrate the actual existence of ... an opinion in the mind of the juror as will raise the presumption of partiality." State v. David, 425 So.2d 1241, 1246 (La.1983) cert. den. David v. Louisiana, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986) citing Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Toney's responses, as a whole, did not reveal partiality. Gray's challenge for cause was correctly overruled.
Gray challenged prospective juror Theresa Wilson because her niece had been a rape victim. Wilson testified, however, that this created no problem for her and she did not know the details of that case. She repeatedly stated she could be impartial, render a fair and just verdict, and accept the applicable principles of law. Although she agreed everyone is against a rapist, she did not indicate she believed Gray was a rapist. Gray did not show that Wilson was biased or prejudiced; therefore, the Trial Judge did not err when he overruled the challenge.
Gray challenged prospective juror Danna Capps because, eleven years before, her ex-husband from whom she was then *1247 separated was prosecuted for what she thought was attempted rape of a fifteen year old in Jefferson Parish. She knew nothing specific about the case and thought her ex-husband was "acquitted with some stipulations." She said her feelings about her husband at that time would not interfere with the Gray case. She repeatedly stated that she could give Gray a fair and impartial trial, believing Gray was innocent until proven guilty. Gray also objected to Capps because she is a distant cousin of the district attorney. Capps stated, however, that she never visited the district attorney's home nor had she seen or spoken to him in years. Her relationship with him, she testified, would not influence her decision in the Gray case. The Trial Court did not err in overruling Gray's challenge of Capps.
Gray challenged juror Melvin Istre for cause because Istre and the prosecuting attorney served as poll commissioners together and because Istre's nephew is a parish deputy policeman. Istre assured the Court that he had not spoken to the prosecuting attorney in years and that this familiarity would cause no problem for him or affect his ability to be an impartial juror. Istre stated that he had not discussed the Gray case with his nephew, nor did he have a close relationship with him, not having spoken to him since he became a policeman. Istre testified that he did not favor the State, and he would hear the evidence presented and decide the case according to the law given. The Trial Judge's decision to overrule the challenge was not an abuse of discretion.
Gray's final voir dire complaint involves prospective juror, Ceceile Reed, whom Gray challenged for cause. Because the Trial Judge sustained Gray's challenge and excused the juror, Gray's claim is meritless.
SECOND ASSIGNMENT OF ERROR
Gray complains that he was unaware that the State was to call his former wife as a witness until the morning of trial. The Trial Judge overruled Gray's attorney's objection to her testimony.
La.C.Cr.P. arts. 716 et seq. provide for discovery by a defendant and set forth the material which the State must furnish to a defendant upon his motion. None of the provisions require the State to inform a defendant of the witnesses it will call. Moreover, Gray did not file a discovery motion seeking a witness list from the State. Hence, the Trial Judge did not err in overruling Gray's objection to his former wife's testimony.
THIRD ASSIGNMENT OF ERROR
Gray assigns error to the Trial Judge's decision to admit a photograph of him into evidence, claiming that the photograph is a "mug shot" which depicted him with longer hair and a beard. The photograph, an enlarged picture of Gray's driver's license, does not depict Gray as unkempt or in a negative manner, nor does it imply that he has a criminal record as a true "mug shot" might. Gray has demonstrated no possible prejudice to him resulting from the introduction of the photograph; there is no merit in this assignment of error.
FOURTH ASSIGNMENT OF ERROR
Gray assigns error to the Court's acceptance of David Doten, the foster father of two of the children, as an expert in the fields of "Psychiatric Social Work" and "Mental Health and Sexual Abuse." The Court's acceptance of Doten as an expert followed extensive questioning about his experience and qualifications. It is apparent that Doten possessed the qualifications to testify as an expert.
Gray argues that Doten should not have been an expert in this case because he was a foster parent of the victims. Bias does not preclude a witness from being qualified as an expert. It may however be considered by the jury in deciding what weight to give to the testimony. Doten's relationship to the children was known by the jury who undoubtedly considered it in evaluating his testimony. Hence, there was no error in the Court's acceptence of Doten as an expert.
*1248 Gray also complains that the Judge erroneously allowed Doten to testify to an ultimate issue in the case, one that should have been decided by the jury. Specifically, when asked whether, in his expert opinion, the children had been sexually abused, Doten stated "[t]here is no question about it. Beyond a shadow of a doubt they were abused."
The purpose of an expert witness, particularly in criminal cases, is to provide the jurors with a basis of knowledge and background information on a subject. The jury's role is that of ultimate fact finder: the jurors relate background knowledge from the expert to the facts established by evidence at trial and make a determination of the defendant's guilt. State v. Lard, 459 So.2d 1189 (La.App. 4th Cir.1984), writ denied 464 So.2d 1376 (La.1985).
Opinion testimony is generally disfavored and sometimes prohibited. See, La. R.S. 15:463. When an expert testifies, the reluctance to admit opinion testimony is relaxed. State v. Wheeler, 416 So.2d 78 (La.1982). However, courts will exclude "extreme expressions", even by experts, on matters such as how the case should be decided or whether the defendant is guilty. Various factors weigh heavily against the admission of this type of testimony including, 1) the evidence is not truly expert testimony because it relates to a matter well within the jury's understanding and does not aid the jury in reaching a decision; 2) the opinion is abstract and indirect; and 3) it relates to an ultimate issue instead of a collateral matter. Wheeler.
Applying these factors in the instant case, Doten's statement, while coming perilously close to those expressions which are generally prohibited, was not tantamount to an opinion on how the case should be resolved or whether Gray was guilty. Doten's testimony as a whole enlightened the jury in the area of behavior traits, an area beyond the average lay person's knowledge and assisted the jury in its search for truth. State v. Patrick, 513 So.2d 449 (La.App. 2nd Cir.1987). The conclusory opinion at issue was merely a summation of this expert's application of behavior traits to his observation of these children. Moreover, considering Doten's detailed review of behavior traits in abused children, the statement at issue was neither abstract nor indirect because Doten's testimony clearly established the facts upon which his expert opinion was based. Finally, we do not view Doten's statement as testimony relating to an ultimate issue. Doten did not express an opinion on Gray's guilt, he merely stated that the children had been abused. Thus, considering that the jurors were free to form their own opinion regarding whether Gray was the person who had abused the children, assuming they accepted Doten's opinion that the children were abused, the instant case is distinguishable from cases cited by Gray in which the expert testimony of policemen was tantamount to giving an opinion on the defendant's guilt with respect to drug charges.
Hence, considering the particular facts in this case, Doten's statement, while approaching the outer limits of acceptable opinion testimony, was not erroneously admitted into evidence.
Gray complains that Doten should not have been allowed to wear his sheriff's badge at trial, or to have testified as an expert because he appeared in one of the videotaped interviews. These arguments are meritless because Gray did not object to the badge at trial nor did he show any prejudice from or relevance to Doten's presence at the interview.
Accordingly, Gray's assignment of error regarding Doten is meritless.
FIFTH ASSIGNMENT OF ERROR
Gray complains that receipt of the videotapes into evidence violated his right to confront his accusers.
La.R.S. 15:440.1 et seq. provides for electronic recording of statements by child abuse victims. There are potential constitutional infirmities inherent in this statute. Two which concern us most are the potential for depriving the jury of important "demeanor" evidence by the use of video testimony, and the potential for forcing a defendant to choose between two constitutional rights, his right to confrontation and his right to remain passive because he is presumed innocent. The latter issue arises *1249 under the Louisiana statute because the State is only required to make the child available to testify, not to call the child to testify at trial. La.R.S. 15:440.5(A)(8). Hence, the defendant, attempting to prove his innocence, may be forced to call the child during his case and question the child as an adverse witness. In doing so, the defendant is compelled to choose between two constitutional rights, a consequence which appears to us unconstitutional.
In this case, however, because of the specific facts before us, we do not have to reach these important constitutional issues. At Gray's trial, the Trial Judge found the three children competent to testify and the State called the children as witnesses, subjecting them to cross-examination by Gray on the merits of the case. Therefore, although there are cases which may call the constitutionality of La.R.S. 15:440.1 et seq. into question, where perhaps the State fails to call a child to testify or when the Judge cannot declare the child competent to testify, in this case with its specific facts, Gray's constitutional rights were not violated.
Gray also complains that Doten should not have been an interviewer. Doten appeared on one tape for the last few minutes after the children had been extensively interrogated. La.R.S. 15:440.4(A)(2) provides that no relatives of the victim may be present in the recording room. A foster parent, who had known the boys for a few months, is not a "relative" within the meaning of the statute.
Gray also claims that he was prejudiced because his daughter was allegedly able to "rehearse" her video testimony because the first tape she made did not have sound, and it was the second tape which was shown to the jury. La.R.S. 15:440.4 provides only that the recording, which must be both visual and oral, be voluntarily made. There is no provision limiting the number of tapes made or specifying which tapes may be admitted. Without any evidence that the children made the tapes involuntarily, it is immaterial that only the daughter's second tape was admitted.
Gray's argument that he was deprived of the right to confrontation because the videotapes were made in Idaho is also without merit. Each of the persons shown on the tapes testified at trial, subject to cross-examination.
SIXTH ASSIGNMENT OF ERROR
Gray argues that the Trial Court erroneously limited cross-examination of the oldest Gray child. During the cross-examination, the State objected four times. The Trial Judge overruled the State once. Twice the Judge allowed the substance of the desired testimony, merely intructing defense counsel to rephrase his question to conform with proper form or with the child's previous testimony. The one time the Court sustained the State's objection, the question asked by Gray's attorney sought irrelevant testimony. Therefore, there is no evidence that the Trial Judge erroneously limited cross-examination of the child.
SEVENTH ASSIGNMENT OF ERROR
Gray argues the State failed to prove beyond a reasonable doubt that he committed the offenses charged. In assessing the evidence to support a conviction in a direct evidence case, the reviewing court must determine whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. To prove the crime of aggravated rape in this case, the State had to prove beyond a reasonable doubt the following elements: 1) oral or vaginal sexual intercourse, 2) of a victim under the age of twelve. La.R.S. 14:42(A)(4). The daughter stated in the videotaped interview that her father had vaginal and anal sexual intercourse with her. The sons both stated that they had seen their father commit these acts with their sister, and that their father had anal sexual intercourse with each of them. We find the evidence sufficient to convict Gray on all counts.
Accordingly, Gray's conviction and sentences are affirmed.
AFFIRM.
PLOTKIN, J., concurs and will assign reasons to follow.
*1250 PLOTKIN, Judge, concurs with reasons.
I concur in affirming the conviction and sentence. However, I do so solely because of the particular facts, the procedures employed and the law applicable to this case.
Three of the defendant's assignments of error have arguable merit but lack either sufficient probity or record development to trigger a reversal or retrial. Those contentions are (1) the trial court's failure to excuse various jurors for cause, (2) the impermissible use of expert testimony and (3) the constitutionality of La.R.S. 15:283 and La.R.S. 15:440.1 et seq., the child shield law.

JURY CHALLENGES
Defendant Gray challenged five jurors for cause, including John Toney and Danna Capps. These two jurors' personal experiences evince facts and/or attitudes that could have effected their partiality and justified a cause challenge.
Juror John Toney was the principal of the elementary school that the victims attended. He knew the victims and defendant personally. On occasions the victims came to his home. His extensive personal knowledge of facts and parties in this case are evidenced by his testimony:
I am familiar with the family, we have taken the children home. We have called Family Services because of the way some of the children were dressed in school. I have had teachers discuss the possibility of child abuse because the kids had burns on their bodies. (Emphasis ours.)
Juror Danna Capps' estranged husband was charged and convicted of a crime similar to that of the instant case ten or eleven years prior to this trial. He was convicted of rape of a juvenile for which he received a sentence accompanied by psychiatric treatment. At voir dire Danna Capps was asked by the Court:
"Did that [the rape of the juvenile] create any feelings in you either animosity towards him as as a type of person who would do this or any animosity towards the DA or the Sheriff's office?"
She answered:
"Not against the Sheriff's Office. I had a lot of emotional feeling towards my husband at the time...."
In addition to her attitude toward her husband, Danna Capps' potential as a juror was compromised by the fact that she is a third cousin of District Attorney Darryl Bubrig.
In spite of these two jurors past experiences, the State mechanically asked them the standard leading question, whether they could set aside their personal experiences and decide the case based solely on the facts and law. Each affirmed that he could. The procedure employed by the State to remedy the original disqualification barely falls within the scope of trial court discretion for denying the defendant's cause challenges.

EXPERT OPINION
Dave Doten, the foster parent of two victims, was the state expert. He was qualified as an expert in the fields of Psychiatric Social Work and Mental Health and Sexual Abuse. The critical questions asked of him and his answers are as follows:
Q. Sir, based on your expertise in this field and what you saw with those children, and what you saw in their drawings, and you lived with them, and what their outward signs were, their indicators, and the video tape, and what they revealed in that video tape and in your expert opinion, were those children sexually abused?
A. There is no question about it. Beyond a shadow of a doubt they were abused.
Later Mr. Doten was asked:
Q. Sir, again, how strong is your opinion of sexual abuse of these children when you find all of these indicators present that you talked about, and the child revealed things to you, and makes a revelation, how strong is your opinion about sexual abuse?
*1251 A. My opinion is extremely strong. It is unwaverly [sic].
My colleagues acknowledge and I agree that this is a close issue because in a criminal case an expert witness shall not express an opinion as to the guilt or innocence of the accused. State v. Lard, 459 So.2d 1189 (La.App. 4th Cir.1984), writ den. 464 So.2d 1376 (La.1985); State v. Lowery, 491 So.2d 726 (La.App. 4th Cir. 1986), writ den. 496 So.2d 348 (La.1986). The majority notes that Doten did not express an opinion as to Gray's guilt, but only as to whether or not the children had been sexually abused. Doten had special knowledge of sex abuse; therefore, his testimony was admitted into evidence. He was crossexamined without limitation. Because of the peculiar facts of this case, i.e., Doten's special status as expert and his knowledge of the children as a foster parent, the majority is able to accept Doten's testimony that the children were abused. I question whether Doten's expert testimony was required or justified because his prejudice is obvious in this record. The Supreme Court in State v. Wheeler, 416 So.2d 78 (La.1982), defined the criteria for the use of expert testimony:
To warrant the use of expert testimony two elements are required: (a) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the understanding of the average layman; and (b) the witness must have sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth.
The victims unequivocably testified they were sexually abused by their father. Doten's testimony did not provide any assistance to the jury in reaching a decision. His testimony falls short of a direct opinion that the defendant was guilty of the crime charged, and therefore, it is harmless error in view of the evidence presented by the State.

CONSTITUTIONALITY OF THE CHILD SHIELD LAW
The majority definitively and thoroughly defines the constitutional questions associated with La.R.S. 15:283 and La.R.S. 15:440.1 et seq. The facts in this case indicate that the minor victims were found competent to testify, testified and subjected themselves to a full cross-examination. The defendant elected, as a trial tactic, not to ask his children any direct questions which related to sexual misconduct. Therefore, the defendant's legal rights were not violated because he exercised his right of unrestricted confrontation of his victims.
However, the trial court committed harmless error in this case, in failing to test the legal competence of the minor victims prior to showing the jury the video tapes made by the defendant's children in Idaho. The better practice is to test the witnesses competency to testify first, and if they are found legally competent, thereafter to exhibit the tapes to the jury. This procedure avoids the risk of submitting to the jury evidence that subsequently may be inadmissible and prejudicial.