559 So.2d 541 (1990)
STATE of Louisiana, Appellee,
v.
Joe E. WHITE, Appellant.
No. 21418-KA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
*542 Bobby L. Culpepper, Jonesboro, for appellant.
William J. Guste, Jr., Atty. Gen., John C. Blake, Dist. Atty., George H. Meadors, Asst. Dist. Atty., for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
MARVIN, Judge.
We reverse White's conviction of possession of marijuana with intent to distribute because the prosecutor and the police officer-witness, over defendant's objections, were allowed to relate to the jury inadmissible hearsay details of when and where White would receive 12 pounds of marijuana and transport it in an automobile into Claiborne Parish. State v. Thompson, 331 So.2d 848 (La.1976).
Under the circumstances of this record, we cannot find that these errors were harmless beyond a reasonable doubt.
The hearsay details of why an officer stops and searches a vehicle are admissible before a judge on a hearing of a motion to suppress, the issue being whether the officer had a legally sufficient hearsay basis to stop and search. At trial, however, the hearsay basis for the stop and search is not an issue for the jury and, if it is at all relevant, the officer may testify only, and without detail, that he stopped and searched the vehicle because of what he had been told by another. State v. Thompson, supra, makes the distinction that was not made in this record. See also State v. Johnson, 513 So.2d 832 (La.App. 2d Cir.1987), writ denied.
We remand to allow the State to re-try White on the charge of possession of marijuana with intent to distribute. State v. Banks, 439 So.2d 407 (La.1983).

FACTS
The hearsay details about the crime, of course, came from a confidential informant. On June 3, 1988, this informant told Deputy Steve Williams of the Claiborne Parish Sheriff's Office that he overheard Joe White say that White and two women "were going to South Texas to pick up a quantity of marijuana, approximately ten to twelve pounds, large quantity." The informant said White was planning to leave Homer in the early evening of June 3, in *543 "his" Monte Carlo (that was later shown to be registered in someone else's name) and to return to Homer about 24 hours later on Highway 79 by driving north from Minden.
After receiving this information, Williams, who knew White's address, saw the Monte Carlo in the garage of White's residence in Homer. The Monte Carlo was gone when Williams drove by White's residence later that evening. The next day, Williams and a Homer police officer made periodic "spot checks" for the car at White's residence and elsewhere "around town," but did not see it.
On the night of June 4, Williams waited in an unmarked car on Highway 79 and saw the Monte Carlo approaching Homer from the south. He stopped the car and informed White, who was driving, that he "had information he was ... transporting controlled dangerous substances in his car." Deputy Williams testified that White consented to a search of the car. In the back seat Williams found about 12 pounds of marijuana in four plastic bags that were inside a partially torn paper sack.
There were two female passengers in the car, one sitting in the front seat and the other lying down on the back seat. Although Williams apparently wrote in his initial report that the back seat passenger was "practically covering" the sack containing the marijuana, he testified at trial that he "couldn't tell if she was practically covering it or she had something over that was covering it.... Seems like there was a pair of tennis shoes and maybe something else ... on top of the bag."
Neither White nor his passengers testified at trial. White's apparent defense, based on inferences from the location of the marijuana in the back seat and the state's evidence that he consented to the search of the car, was that he did not know the marijuana was in the car and did not have the required "intent" to possess marijuana. Other than the hearsay, there was no independent evidence of White's conduct or connection with the marijuana before he was stopped.
White's motion to suppress the marijuana, challenging, among other things, the voluntariness of his consent and the reasonableness of the stop, was heard and denied on the day of trial, outside the jury's presence.
When the prosecutor, in his opening statement to the jury, began relating the details of the informant's conversation with Deputy Williams, defense counsel objected, correctly arguing that the content of the tip was inadmissible hearsay at trial, notwithstanding that it was properly admitted at the motion to suppress, because the reasonableness of the stop was not an issue for the jury to decide.
The prosecutor replied that he was "going to have to put on that testimony ... to show the probability for [Williams] stopping the car to start with. I don't have to go into all the great details of it, but [Williams is] going to say ... that's why he stopped him."
The court overruled the objection, and the prosecutor continued, telling the jury:
Deputy Williams received information that one Joe E. White would shortly be leaving for Texas infirst off, that he was in possession of a Monte Carlo, a 1986 Monte Carlo automobile located on King Street here in Homer, Louisiana, and that he would shortly, probably during the day of June 3, 1988, be leaving to Texas for the purpose of procuring a quantity of marijuana, specifically about twelve pounds of marijuana to bring back to Louisiana. That he would be leaving, would probably have two females, two white females, in his company, and that he would probably be returning to Homer along U.S. Highway 79 South ... [in] the evening hours of the following day[.]
When Deputy Williams began to testify before the jury to the details of his conversation with the informant, defense counsel again objected to hearsay. The court overruled the objection after the prosecutor stated the evidence was "laying the foundation for the actions, the state of mind that Deputy Williams then arrived at."
Williams then related to the jury the informant's statements to him of the expected *544 purpose of White's trip to Texas (to pick up about 12 pounds of marijuana), as well as the estimated departure and return times, the expected route of return to Homer, the description of the car White would be driving, and the likelihood that he would have two female passengers.
After White was convicted, he moved for a new trial on several grounds, including his contention that the admission of Deputy Williams' hearsay testimony was error. The court denied the motion, finding that the evidence was not hearsay under the circumstances because it was offered to show "the state of mind of the officers, ... why they did what they did and ultimately made the stop that ... resulted in the finding of the controlled dangerous substance under the circumstances that had been aptly described by the C.I."

LAW
When a police officer makes a stop in reliance on an informant's tip, the officer's testimony about what the informant told him is not deemed to be hearsay at a hearing on a motion to suppress because it is offered to prove the officer's state of mind which is relevant to the issue of the legality or reasonableness of the stop, and not to prove that the informant's assertions were true. State v. Johnson, supra.
A pre-trial ruling on a motion to suppress is binding at trial. C.Cr.P. Art. 703. While the officer who stopped the defendant may testify at trial that he was acting on an informant's tip when he made the stop, he may not relate to the jury the details of the informant's out-of-court-statement when those details amount to an assertion that the defendant has committed or will commit the crime for which he is being tried. State v. Thompson, supra; State v. Murphy, 309 So.2d 134 (La. 1975); State v. Kimble, 36 So.2d 637 (La.1948).
Such "content" or detailed testimony is inadmissible hearsay evidence at trial because the officer's state of mind and the reasonableness of the stop are not issues for the jury to decide, and the evidence can only be deemed as being offered to prove that the defendant committed the crime, as the informant said he did or would. See fn. 2 and accompanying text in State v. Thompson, supra, 331 So.2d at 848. See also Pugh & McClelland, The Work of the Louisiana Appellate Courts for the 1975-1976 TermEvidence, 37 La.L.Rev. 575, 606-609 (1977), for a discussion of the "lucid" and "correct" distinction made in Thompson between the admissibility of such testimony at the hearing on a motion to suppress and at the trial.
Thompson is not discussed in State v. Lard, 459 So.2d 1189 (La.App. 4th Cir. 1984), writ denied, upon which the State relies. In Lard, the court found that the content of the informant's tip was admissible at trial because it was not offered to show "that Lard was in fact engaged in drug trafficking [but rather] ... to show the state of mind of the [arresting] officers, and more particularly, the reason the officers went to the scene." 459 So.2d at 1192. To the extent that Lard conflicts with Thompson, Thompson controls.
In State v. Turner, 392 So.2d 436 (La.1980), the state's witness "did not testify, nor was he asked to do so, as to the conclusions of any informer as to the ... defendant's involvement in the crime." 392 So.2d at 441. Turner is consistent with Thompson. The State's reliance on Turner is misplaced.
Deputy Williams' state of mind was relevant to the issues before the judge at the hearing of the motion to suppress. The informant's out-of-court statement to Williams that White was going to Texas to pick up marijuana was inadmissible hearsay at White's jury trial.
When hearsay evidence has been improperly admitted at trial, the error is deemed to be reversible and not harmless unless the appellate court determines, beyond a reasonable doubt, that the improperly admitted evidence did not contribute to the verdict. State v. Banks, supra.
The prosecutor began his closing argument to the jury by repeating the hearsay account of the informant's tip. Discussing *545 the element of constructive possession, the prosecutor argued to the jury:
A person may be in constructive possession... if marijuana is subject to his dominion and control regardless of whether or not it's in his physical possession. So if you conclude that Joe White at whose home this car had been seen previously by the officers, who was driving and operating the car when it was stopped here in Claiborne Parish along the exact route that the confidential informant said it would be, if you conclude that the driver of the automobile was the person who had possession and dominion and control of that, then ... the State contends you'd be justified in concluding that he did in fact have possession because it was his car that he or he was the operator of the vehicle. He was the one ... who could say where it went, where it stopped, where it came from, where it ultimately went to. (Our emphasis.)
After defense counsel argued to the jury that the confidential informant was not present in court for questioning "about what he said or what he didn't say or what he knew," the prosecutor made this rebuttal argument:
[T]he confidential informant is not a witness because he didn't see. He didn't see Joe White possess the marijuana. He had information that he passed on to the officers that he was going to get it, and his information panned out exactly to the tee just as he told the officers....
[The informant] passed the information on to the law officers who did their duty, they went out and intercepted this car right at the place where it was supposed to be. So, don't get hung up `cause we don't have the confidential informant up here. We're not seeking a conviction of this man based on what this guy says is goingwould happen or might happen. That's not whatyou're basing your verdict on what these officers say that they saw, the marijuana that they recovered from the vehicle being operated by Joe White. (Our emphasis.)
Notwithstanding the prosecutor's assertion that the State was seeking a conviction based on what the officers saw when they stopped White, and not on what the informant had told them, the content of the informant's tip was the strongest evidence that White knew the marijuana was in the car.
Without the hearsay evidence and the State's emphasis to the jury that the informant's information "panned out exactly to the tee just as he told the officers," the jury may not, from the State's evidence, have drawn the conclusion or inference that White knowingly and intentionally possessed the marijuana. See and compare State v. Millet, 356 So.2d 1380 (La.1978) and State v. Brown, 549 So.2d 323 (La.App. 1st Cir.1989).
On this record, we find that the erroneous admission of the hearsay evidence was prejudicial and affected substantial rights of the accused and was not harmless beyond a reasonable doubt. C.Cr.P. Art. 921; State v. Banks, supra.

DECREE
We reverse and remand for a new trial.
REVERSED AND REMANDED.