SEXTON, Judge.
Relator, Chief Deputy David M. Almond, was adjudged guilty of direct criminal contempt by Judge Gayle K. Hamilton on June 1, 1984. He was sentenced to serve forty-eight (48) hours in jail beginning 6:00 p.m. June 1, 1984. He immediately applied to this Court for supervisory relief and a stay of execution of sentence, and this Court stayed all proceedings in the District Court. We now grant the writ and make the relief peremptory.
During a recessed hearing on a motion to suppress in a first degree murder trial before Judge Hamilton in Shreveport, Louisiana, certain information was made available to the assistant district attorney handling the prosecution, A.M. Stroud, III, First Assistant District Attorney for Caddo Parish. According to the information he received, there was an indication that a deputy sheriff may have falsified his testimony at the hearing, that the fabrication may have been at the instruction of a superior officer, and that the rule of sequestration had been violated by the first deputy sheriff and perhaps by the second deputy. Upon receipt of this information, Mr. Stroud and District Attorney Paul J. Car-mouche summoned Chief Deputy Almond to their office on May 7, 1984. After a discussion of the matter with him, they requested Chief Deputy Almond, who him *692 self was under the rule in this case, to initiate an internal investigation to ascertain the truthfulness of the allegations which had been made.
Thereafter, at the request of Chief Deputy Almond, an investigation by Sgt. Sherry Carter of the Caddo Parish Sheriffs Department, Internal Affairs Division, ensued. After completion of the investigation, the results were turned over to the assistant district attorney who disclosed to the court and counsel for Nicky D. Taylor, the defendant in the criminal proceeding, that erroneous testimony had been given concerning the circumstances surrounding the search of a vehicle found at Nicky D. Taylor’s residence, and that the rule of sequestration had been violated. As a result, Judge Hamilton ordered a hearing on May 14 to determine if violations of the rule of sequestration amounting to direct contempt of court had occurred.
At the conclusion of the evidentiary hearing of May 14, 1984, Judge Hamilton dismissed contempt charges against everyone except Chief Almond, and took that matter under advisement. On June 1, 1984, Judge Hamilton adjudged Chief Almond guilty of direct contempt and imposed the penalty previously indicated.
LSA-C.Cr.P. Art. 21 defines direct criminal contempt:
Art. 21. Direct contempt
A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge; or, a contumacious failure to comply with a subpoena, summons or order to appear in court, proof of service of which appears of record; or, a contumacious failure to comply with an order sequestering a witness.
A direct contempt includes, but is not limited to, any of the following acts:
[[Image here]]
(3) Contumacious violation of an order excluding, separating, or sequestering a witness;
[[Image here]]
(Emphasis ours.)
The term “contumacious” is not defined in the Louisiana jurisprudence other than by example. The Supreme Court has held that an attorney’s belligerent and persistent argument with the court was contumacious behavior. Kidd v. Caldwell, 371 So.2d 247 (La.1979). On the other hand, the Supreme Court has found an attorney’s statement in open court that “nobody wants to get to the truth” was improper and unwise, but was not contumacious. In re Masinter, 355 So.2d 1288 (La.1978).
In Black’s Law Dictionary, 298 (rev. 5th ed. 1979), “contumacious” conduct is defined as “wilfully stubborn and disobedient conduct.” Burton’s Legal Thesaurus, (1980), suggests that “contumacious” means stubbornly disobedient, stubbornly rebellious, openly defiant, or willfully disrespectful.
It is evident that for contempt to be contumacious, and thus be direct contempt, the offending conduct must be apparently rebellious, beligerent or in open defiance of the authority of the Court. The alleged offending act of Chief Deputy Almond occurred as a result of a specific request from the First Assistant District Attorney of Caddo Parish because of his concern that witnesses for the State (members of applicant’s department) had perjured themselves in a motion to suppress being held in a murder case. As an officer of the Court, Assistant District Attorney Stroud, considering the information at his disposal, had an obligation to determine if perjury had been committed by his witnesses in an ongoing trial. At Stroud’s request, Chief Almond ordered a member of his internal affairs division to conduct this investigation. Apparently, the investigator individually interviewed the witnesses from the Department who had testified at the trial. The investigation was expeditious and the true facts were brought to light.
This entire procedure was designed to, and did in fact, aid in the presentation of the truth. Such is the sole purpose of LSA-C.Cr.P. Art. 764, the authority for sequestration of witnesses in criminal cases. To that end, the article is designed *693 to insure that a witness will testify concerning his own knowledge without being influenced by the testimony of prior witnesses, and to strengthen the role of cross-examination in developing the true facts. State v. Kimble, 407 So.2d 693 (La.1981).
Thus the conduct here complained of does not amount to direct contempt. Chief Deputy Almond, who was himself a witness, ordered an investigation by another deputy sheriff into the conduct of members of his own Department at the direction of the District Attorney and First Assistant District Attorney. This investigation was directed at the testimony of members of the Chief Deputy’s Department who had allegedly perjured themselves in an ongoing but recessed trial. In pursuing the matter, Chief Almond discussed the case with Mr. Stroud and Mr. Carmouche of the District Attorney’s Office. He also discussed it subsequently with Ed Blewer, counsel for the Sheriff’s office. Chief Almond’s discussions with the attorneys from the District Attorney’s Office is not a violation of the rule, as they were attorneys in the case. Likewise, his discussions with his own attorney cannot be said to be a violation. The record indicates that in delegating the investigation to Deputy Carter, who was not a witness in the case, Chief Almond spoke of the matter only in general terms. The only arguable violation of the Court’s order was Chief Almond’s instructions to the two deputies involved in the investigation to cooperate with Deputy Carter.
These actions are not openly defiant, belligerent or rebellious and thus do not rise to the level of contumacious behavior. Since these actions do not amount to contumacious conduct, direct contempt has not occurred. Parenthetically, we express serious doubt as to whether these circumstances even approach constructive contempt as per LSA-C.Cr.P. Art. 23. See Nelson v. Nelson, 421 So.2d 366 (La.App. 1st Cir.1982).
In fact, it appears that the trial judge did not find Chief Almond guilty of direct contempt, for in his oral reasons he stated:
The Court cannot honestly state that it has found you [Chief Deputy Almond] to be in contempt in the sense that you were the one going around, talking about the case, except in the investigation, internal investigation, of which I knew nothing. However, I had stated earlier that there can be no talking about this case or any other case, if there is to be any integrity of our judicial system. For this reason, the Court is going to find you in contempt, admitting that it is largely symbolic of those who are under you. You are the Captain of the Ship, as I said, and I think you and everyone in the Sheriff’s office must know that even if I stand alone, I feel the integrity of this Court must be preserved at whatever cost.
Thus, it does not appear that the trial court actually found that Chief Almond had himself violated the rule of sequestration. Nevertheless, we here hold specifically that the record does not show that the applicant committed a contumacious violation of the sequestration order and therefore he cannot be found to be in direct contempt of court.
For the reasons aforesaid, the writ is granted and made peremptory. The ruling of the trial court finding the applicant guilty of direct contempt is reversed and set aside, and the applicant is ordered discharged herein.
WRIT GRANTED AND MADE PEREMPTORY.