NORRIS, Judge.
Defendant was charged with, tried by jury and convicted of two counts of distribution of marijuana in violation of La.R.S. 40:966(A)(1). He was subsequently sentenced to six years at hard labor on each count, sentences to run concurrently. Defendant appeals his conviction relying on two assignments of error. For the reasons hereinafter expressed, defendant’s convictions and sentences are affirmed.
FACTS
During the latter part of March and early April of 1983, Officer Oliver Ellis of the Shreveport Police Department was working in an undercover capacity with the Bossier Parish Sheriffs Department investigating drug dealings in the Plain Dealing, Louisiana, area.
On March 25, 1988, Ellis contacted Norman Johnson in an effort to purchase marijuana. Ellis accompanied Johnson to Bobby’s Lounge in downtown Plain Dealing. While inside, Johnson introduced Ellis to Danny Oliver. Johnson told Oliver that Ellis wanted to purchase some marijuana. Oliver then proceeded to a table where defendant was seated along with several other black males. Oliver asked defendant if he had any marijuana. Defendant told Oliver to look in the pocket of a jacket on the back of his chair. Oliver reached in the jacket, pulled out a bag, carried it to where Ellis was standing and told Ellis and Johnson to go into the restroom. Inside the restroom, Oliver produced and handed Ellis the clear plastic bag. Ellis examined the bag and its contents and complained to Oliver about the quality of the marijuana. Oliver took the bag back, stated there was some of better quality, went back to where defendant was seated, gave something back to defendant, got something else, came back to where Ellis was and handed him another plastic bag. Ellis again examined the contents of the bag and gave Oliver $25. Oliver again approached defendant and gave him the money. Ellis initialled the bag and later turned it over to Deputy ‘Luce of the Bossier Parish Sheriff’s Office. Luce ultimately turned the bag and its contents over to the crime lab and examination by the crime lab confirmed the bag contained marijuana.
On April 2, 1983, Ellis again approached Oliver in the same establishment early in the evening and expressed his interest in purchasing more marijuana. Oliver informed Ellis the person who had the marijuana, a man Oliver called “Bobby,” was not there but suggested they go by his residence. Ellis and Oliver proceeded to a residence but no one was home. They then went back to the lounge.
At approximately 9:00 p.m., Ellis saw defendant sitting at a table in the lounge. Oliver approached Ellis and told him “the man with the good weed” was there and stated if he still wanted to get another bag, he could. Ellis replied he did and Oliver approached the defendant. Oliver returned to Ellis and told him the dope was not at the lounge and somebody had to go and get it. Approximately 15 minutes later, an unidentified black male in a white jump suit entered the lounge and gave Oliver a plastic baggie which Oliver passed to Ellis. Ellis looked the baggie over, gave Oliver $25 and Oliver approached the defendant and appeared to hand defendant the money. Ellis later initialled the baggie, turned it over to Deputy Luce and Luce forwarded the evidence to the crime lab. The crime lab analysis again confirmed the baggie contained marijuana.
At trial, Danny Oliver, Norman Johnson, Officer Ellis and Deputy Alton Luce testified for the state. Ellis testified substantially to the factual account related above. Johnson basically corroborated Ellis’ ver *1048 sion of the March 25, 1983 incident but was not present on April 2, 1983. Danny Oliver, who was also charged in the March 25 incident and testified he considered himself “on the hot seat,” also corroborated Ellis’s version of the March transaction, but stated it had been so long ago he could not remember whether Ellis had bought marijuana on another occasion when he and Ellis had gone to the lounge.
The jury returned a verdict of guilty on both counts. Defendant appeals relying on the following assignments of error:
(1) The trial court erred in failing to suppress an alleged oral inculpatory statement made by defendant to Deputy Luce in the hallway of the Bossier Parish Courthouse on the morning of the first day of defendant’s jury trial; and
(2) The trial court erred in allowing state witness Oliver D. Ellis to testify as to what Danny Oliver said during the alleged sale of marijuana, such testimony constituting hearsay.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant contends the trial court erred in failing to suppress an alleged inculpatory statement he made to Bossier Parish Deputy Sheriff Al Luce in the hallway of the Benton Courthouse just before noon on March 26, 1984, the day defendant’s case was scheduled for trial. Defendant argues the statement was inadmissible because (1) Deputy Luce violated the rule of sequestration; (2) the statement was not inculpatory in nature; (3) defendant was not advised of his Miranda rights prior to making the statement; (4) the statement constituted hearsay; and (5) Deputy Luce was unable to recall the exact words spoken.
The statement complained of occurred during a conversation between defendant, his friend Harold Joe Black, who was on trial in another case, and Deputy Luce on the first morning of the scheduled date for defendant’s trial. The next day, March 27, 1984, the prosecutor served a La.C.Cr.P. art. 768 notice on defense counsel that he intended to use the statement as evidence. Defense counsel immediately orally moved to suppress the statement and the court conducted a hearing before opening statements.
The testimony adduced at the suppression hearing revealed that during a morning recess or the noon recess on March 26, 1984, prior to the sequestration of the witnesses, Harold Joe Black and the defendant were standing in the courthouse hallway. Deputy Luce walked by and the three men started a conversation. Black asked Deputy Luce about some tools in Black’s truck, which had been impounded in connection with a drug charge against Black. At this point, defendant interjected a remark. Luce could not remember defendant’s exact words, but stated the gist of defendant’s remark was to ask Luce why law enforcement picked on little fish in the drug business like him and left the big fish alone. In his testimony, Black corroborated the fact the conversation was about drugs and that defendant stated to Luce that law enforcement ought to be going after bigger fish. Defendant denied saying anything other than that he agreed with Black’s statement to Luce that Luce ought to “bust some of the white boys” and that some “deputies were smoking dope.”
The trial judge, at the conclusion of the hearing, denied the motion to suppress. He found that the statement was an unsolicited, voluntary, spontaneous, inculpatory statement, made before any witnesses were placed under the rule of sequestration.
The defendant’s argument that the statement is inadmissible because it violated the rule of sequestration is merit-less. The trial judge concluded from the testimony and his own recollection that the statement must have been made prior to any witnesses being placed under the rule of sequestration. This factual conclusion is supported by the record. Furthermore, there is no credible evidence that Luce talked about the case at all. The statements made to him by defendant and Black were completely unsolicited and spontaneous. Even had the conversation violated *1049 the rule of sequestration, it does not automatically follow that the involved participants are disqualified as witnesses in the case. As stated in State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983):
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. [Citations omitted.]
Not every violation of a sequestration order must result in the exclusion of a witness’s testimony. State v. Parker, 421 So.2d 834 (La.1982). The trial judge may, in his descretion, refuse to disqualify an errant witness or declare a mistrial for a violation, if the purpose of the sequestration has not been thwarted, or there is no evidence that the witness’s testimony has been tainted. [Citations omitted.] 430 So.2d at 1306
See also, Official Comments to La.C.Cr.P. art. 764; State v. Taylor, 451 So.2d 691 (La.App. 2d Cir.1984).
In the instant situation, the purpose of the sequestration rule could not have been thwarted by allowing Luce to testify to defendant’s remarks. At the time of the occurrence, no witnesses had testified in defendant’s case. Thus, the incident would neither affect Luce’s testimony as to his knowledge of the events of the case, nor cause his testimony to influence or be influenced by the testimony of others, nor weaken the role of cross-examination in developing facts.
Defendant next contends the statement itself was not inculpatory in nature. A confession admits the commission of a crime, whereas an inculpatory statement admits a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred. State v. Quimby, 419 So.2d 951 (La.1982). Under this definition, the statement made by the defendant in the hallway can be classified as inculpatory. The gist of the statement was that the defendant was a “little fish” in the drug business and that law enforcement should not be harassing him but should be going after the “bigger fish.” The inference that could be drawn is that the defendant was in fact a small drug dealer in the area. Consequently, the statement admitted circumstances which tended to establish guilt or from which guilt could be inferred. The ultimate weight or interpretation to be given the statement, however, was a matter for the jurors to decide.
We conclude that the statement made by defendant in the hallway was a voluntary, spontaneous statement, not given as a result of custodial questioning or compelling influence. Defendant was in the hallway, on bond, visiting with an acquaintance and waiting for his trial to begin. He was not under detention and no one compelled him to say anything. Deputy Luce was not required to give defendant Miranda warnings under these circumstances. See State v. Loyd, 425 So.2d 710 (La.1982); State v. Meredith, 400 So.2d 580 (La.1981); State v. Robinson, 384 So.2d 332 (La.1980); State v. Thornton, 351 So.2d 480 (La.1977).
Defendant’s contention that the in-culpatory statement is inadmissible hearsay is meritless. Inculpatory statements made by a defendant are admissible as a recognized exception to the hearsay rule. State v. Green, 390 So.2d 1253 (La.1980).
Finally, the fact that Deputy Luce was unable to recall the exact words spoken by the defendant does not render the statement inadmissible. State v. Sepulvado, 342 So.2d 630 (La.1977).
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, defendant complains that the undercover agent, Officer Ellis, was allowed to testify about statements made to him by Danny Oliver during the course of the marijuana purchases. Defense counsel interposed a hearsay objection to this evidence. The lower court overruled defendant’s objection *1050 and admitted the statements as part of the res gestae. Defendant was obviously not present in the lounge at one point during the April transaction when some of these statements were made by Oliver to Ellis. Defendant argues that statements made by a person outside the presence of the defendant cannot be considered part of the res gestae.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Molinario, 383 So.2d 345 (La.1980), cert. denied, 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980). Hearsay is generally inadmissible except as provided by statute or one of the well-recognized hearsay exceptions. State v. Brown, 395 So.2d 1301 (La.1981). One of such exceptions is the res gestae doctrine defined in La.R.S. 15:447 as follows:
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
Much of the testimony of Ellis as to what Oliver said was corroborated by Oliver’s own testimony. Some facets of Ellis’s testimony concerned events Oliver did not recall because of the time lapse. However, all of Ellis’s testimony pertained to what he heard or observed before, during, or after the commission of the crimes during a continuous chain of events. In State v. Kimble, 407 So.2d 693 (La.1981), relied upon by the trial judge in admitting the testimony, the court discussed the res gestae exception to the hearsay rule:
Assuming that the above statement was hearsay, it was admissible as part of the res gestae. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if the continuous chain of events is evident under the circumstances. LSA-R.S. 15:447, 448; State v. Drew, 360 So.2d 500 (La.1978); State v. Batiste, 318 So.2d 27 (La.1975).
In the instant case, Ellis was testifying to what Oliver, admittedly a participant in the events, told him during these particular drug transactions. The evidence certainly indicates a continuous chain of events under the circumstances of each transaction. Oliver served as an intermediary between Ellis and the ultimate drug source, the defendant.
In State v. Feeback, 414 So.2d 1229 (La.1982), a state trooper was allowed to testify as to the subject matter of a conversation he heard in which the participants discussed a drug transaction. The court concluded the conversation formed part of one continuous transaction and was therefore admissible under the res gestae exception to the hearsay rule.
The lower court was not in error in overruling defendant’s objection to the testimony complained of. The testimony was clearly a part of the res gestae and admissible in evidence.
This assignment of error is without merit.
DECREE
For the reasons assigned, the convictions and sentences are affirmed.
AFFIRMED.