568 So.2d 198 (1990)
STATE of Louisiana, Appellee,
v.
Leonard GRIFFIN, Appellant.
No. 21688-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*200 Samuel Thomas, Tallulah, for appellant.
William J. Guste, Jr., Atty. Gen.; James D. Caldwell, Dist. Atty., Tallulah; and John D. Crigler, Asst. Dist. Atty., St. Joseph, for appellee.
Before MARVIN and FRED W. JONES, Jr., JJ., and JASPER JONES, J. Ad Hoc.
JASPER JONES, Judge Ad Hoc.
The defendant, Leonard Griffin, age 59, was convicted of second degree murder pursuant to LSA-R.S. 14:30.1, for the shooting death of Roy Lee Ray. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. He now appeals his conviction arguing that the trial court erred in admitting into evidence oral statements and confessions made by the defendant after he allegedly had asserted his right to counsel. He further contends the trial court erred in admitting the testimony of certain police officers of a co-defendant's statements which implicated the defendant. We affirm. The defendant makes the following three assignments of error:

ASSIGNMENT OF ERROR NO. 1
The defendant, LEONARD GRIFFIN, urges on appeal that the Trial Court committed error, when it allowed the confession of June 22, given without counsel, to be introduced into evidence where the defendant stated to the Honorable Judge Brackin on June 20th that he wanted legal representation.

ASSIGNMENT OF ERROR NO. 2
The defendant urges on appeal that the Trial Judge committed error when he allowed hearsay evidence of Paul Tolbert, Jr., in a statement to Sheriff Scott.

ASSIGNMENT OF ERROR NO. 3
The defendant urges on appeal that the Judge committed error when he allowed hearsay testimony of Paul Tolbert, Jr., to be introduced into evidence by State Trooper Jim Morris.

FACTS
On the morning of June 14, 1985, Roy Lee Ray was found lying face down in an agricultural field in an isolated area south of Waterproof, Louisiana, dead of multiple shotgun blasts to the face and head.
The police while investigating the crime scene discovered a spent shotgun shell identified as a ".12 gauge shotgun shell Super X 00 buck". The crime scene investigation revealed tire tracks leading from the victim's body. The tire impressions in the dirt revealed they were made by a vehicle with street tires on the front and back of the right side and mud grip tires on the front and back left side of the truck. Because of the unusual nature of these tread marks, the investigating officers determined they should attempt to locate a vehicle with similar tires.
A wallet was found in the victim's pocket indicating the victim's name was Roy Lee Ray. The investigating officers went to the victim's residence reflected on his driver's license and spoke with the victim's wife, Margaret Ray. She provided the officers with some information about who Roy Ray associated with and Paul Tolbert was included among Ray's associates.
Pursuant to information received by the officers regarding the suspect truck, several police officers went to the residence of Paul Tolbert. A truck with tires similar to the tires which made the tracks found at the crime scene was found at the Tolbert residence. Because the tires on Paul Tolbert's truck could have made the tracks found at the scene, the officers took Tolbert to the Concordia Parish Sheriff's department. After a short period of interrogation, Tolbert "got very emotional and said, I didn't kill him (Roy Ray) but I can tell you who did". Tolbert related to the *201 officers that the defendant, Leonard Griffin, had shot and killed Roy Ray. Based upon the subsequent statements made by Tolbert concerning the specifics of the murder, Trooper Jim Morris prepared a search warrant affidavit and secured a search warrant for the residence of Leonard Griffin. Sheriff Fred Scott prepared affidavits and obtained arrest warrants for Paul Tolbert and Leonard Griffin. Tolbert later pled guilty to Second Degree Murder. He was in the Tensas Parish Jail at the time of the trial but did not testify.
On June 15, 1985, the defendant, Leonard Griffin was arrested in Concordia Parish and charged with second degree murder. He was advised of his constitutional rights and of the fact that a search warrant for his residence had been obtained. Griffin also signed a consent to search form for his residence.
The officers entered the defendant's residence and discovered an Ithica .12 gauge shotgun, one of the items named in the search warrant based upon the information received from Paul Tolbert. The gun was not dusted for fingerprints as it had been recently oiled and rubbed down. Griffin was again advised of his rights and transported to Concordia Parish Sheriff's Department. There, he was questioned by Jim McKinsey and Fred Scott. The defendant admitted ownership of the .12 gauge Ithica shotgun but denied any knowledge of the murder of Roy Ray. An expert who testified at trial established that the spent shell found at the crime scene was fired by this gun.
On June 19 the defendant was interrogated by Roger Jaubert and Edward Thompson. He was fully informed of his constitutional rights including his right to counsel. In this interrogation the defendant admitted he was present when Roy Ray was murdered but stated that Tolbert was the murderer. The defendant related to the officers that Tolbert had come by his residence on June 14 and told him to get his shotgun and buck shot stating that "we are going to go get one." Griffin said that he thought that what Tolbert meant by that statement was that they were going to go deer hunting. He stated they picked up Ray, drove around and drank beer. He stated they drove out to the area where the murder occurred, walked around looking for deer, went into the woods and hunted for a while, and returned to the truck when they did not see any deer. Griffin said that Tolbert asked Ray if he had stopped in Baskin and seen "that woman tonight" and that Ray stated that he had not. Griffin stated that Tolbert then said "you've lied to me your last time, I told you that if you lied to me again I was going to lob your ass" and that Tolbert then shot Ray in the face with the shotgun. Griffin stated that Tolbert then told Griffin to go home and wash the gun and keep his mouth shut.
On June 22, 1985, Deputy Ed Thompson transported the defendant to Alexandria for the purpose of obtaining a polygraph examination on the defendant. Buddy Cavanaugh, a state licensed polygraph examiner was to perform the test. The defendant was informed of his rights and that he did not have to take the test. He agreed to take it, and during Cavanaugh's explanation of the procedures, Griffin suddenly stopped him and stated that his conscience had been bothering him and he wished to confess. This interview was recorded on both audio and video tape. The tapes revealed the defendant had been advised of his constitutional rights and waived them. The tapes were introduced into evidence and viewed by the jury. Essentially, defendant said he and Tolbert knew they were going to kill Ray when they went to pick him up because a week before, at the home of Tolbert's mother, he and Tolbert planned how to murder Ray. In explaining the shooting of the victim, the defendant stated that he fired three shots at the victim. The first shot caused Ray to fall straight back, and the final two were fired straight down into Ray's face. He further stated that before leaving the scene he and Tolbert picked up two of the spent shells and later threw them away.
After returning to St. Joseph from Alexandria, the defendant was again advised of his rights and demonstrated to Sheriff Fred Scott how he had executed the murder.
*202 At trial, the only witness called on behalf of the defense was the defendant who testified that his prior confessions were a lie which he made up because he had been beaten and threatened by the officers. His testimony at trial tracked the story contained in his June 19 statement to the officers that Tolbert had picked him up under the pretext of going deer hunting and that Tolbert had killed Ray.
The jury returned a verdict of guilty as charged. The sentencing delays were waived and the mandatory sentence to life imprisonment without benefit of parole, probation or suspension of sentence was imposed by the court. Defendant appeals raising three assignments of error.

DISCUSSION
Assignment of Error No. 1
By this assignment of error, defendant contends that the trial court committed reversible error when it admitted into evidence the two confessions made by the defendant on June 22, 1985. The contention is based upon the fact that the defendant did not have an attorney present when the confessions were obtained. Defendant contends that his waiver of the right to an attorney pursuant to Miranda warnings was not valid because he had earlier requested an attorney, and had not initiated the contact with the officers which resulted in the confessions.
On June 20, 1985, defendant related to Judge Brackin, who offered to appoint him an attorney, that he would prefer to retain his own counsel rather than be represented by court appointed counsel. Judge Brackin noted the defendant's preference on an indigent defender form "will hire own attorney". Defendant now argues that once he placed the court on notice of his desire to obtain counsel, all interrogations should have terminated until such time as he was able to retain counsel. The defendant argues that his first confession, made in Alexandria, should have been suppressed. He further contends that his second confession, made in St. Joseph 12 hours after the first confession, was a continuation of the first interrogation and should also have been suppressed.
The defendant was fully advised of his constitutional rights, including his right to counsel and his right to stop answering questions at any time at the time his Alexandria confession was obtained. After returning to St. Joseph, the defendant was again advised of his rights before demonstrating to Sheriff Fred Scott how he had executed the murder.
Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), held that when an accused has invoked his right to have counsel present during custodial interrogation a valid waiver of that right cannot be established by showing only that he responded to further police initiated custodial interrogation even if he has been advised of his rights. The court further held that an accused, having expressed desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.
The defendant cites State v. Lee, 524 So.2d 1176 (La.1987) as authority to support his contention that defendant's confession was inadmissible under the Rule of Edwards. While State v. Lee falls within the Edwards rule, it is easily distinguished from this case. In Lee, the defendant underwent custodial interrogation by military authorities after his arrest for murder. He exercised his right to remain silent by writing "I want a lawyer" on the rights form. Later that day Natchitoches City Police took custody of the defendant from the military authorities and again advised him of his rights. The military police had advised the city police that the defendant had requested an attorney previously. Upon arrival in Natchitoches, two and a half hours later, the defendant was again advised of his rights, and again declined to talk about the crime. However, while the defendant was being booked and fingerprinted, a Lieutenant of the Natchitoches City Police and an investigator for the district attorney made remarks purposefully designed to elicit an incriminating response. The court found that this discussion *203 of the crime and the direct questioning about why the defendant would do what he had done was "clearly interrogation initiated by the police after defendant had expressed his desire to deal with the police only through counsel, in violation of Edwards. The record in the instant case reveals that Griffin voluntarily and knowingly waived his right to counsel each time he underwent custodial interrogation.
There is no evidence in this record that the defendant ever requested counsel. The record established that he had been given the right to make phone calls and made several calls prior to his June 22 confessions.
The defendant's statement of his preference to retain his own counsel when offered indigent representation by Judge Brackin does not amount to an expression of desire to "deal with police only through counsel" as was contemplated by Edwards. Although the defendant testified in his behalf at trial, alleging that his confessions were induced by threats and beatings on the part of the police officers, he never testified that he requested an attorney but was denied counsel. The defendant's only testimony with regard to asserting his right to counsel is the following:
Q. Did you ever indicate that you wanted an attorney to anyone?
A. Yes, sir, I said I'd get me one.
Q. Did you ever get one?
A. No, sir.
Q. Why not?
A. I didn't had no chance. I couldn't see nobody or talk to nobody to tell `em about "nairn".
In State v. Boothe, 532 So.2d 203 (La. App.3d Cir.1988), a defendant became upset during interrogation by a state trooper, attempted escape, and upon being captured by two deputies, stated to them "I am going to tell an attorney what the trooper told me". The deputies both testified that the defendant did not request an attorney, but, rather, that he merely stated that he was going to tell an attorney that the trooper had threatened him. The court found no error in the trial court's determination that the defendant's statement did not amount to an express request for an attorney. The situation in the instant case is analogous to that in Boothe.
We find the Edwards rule is inapplicable to the defendant's assignment of error because he never requested an attorney. The defendant waived his right to an attorney at the time of his custodial interrogations where he made his two confessions.
The defendant combines with this assignment of error an argument that the confessions were not admissible because he was beaten by the officers earlier and he gave the confessions out of fear. Each of the police officers with whom the defendant dealt testified at trial that the defendant was properly treated at all times. The video made of the Alexandria confession establishes the defendant was treated extremely nice by the officers and was not in fear or subject to any coercion. The defendant was relatively at ease and affirmatively stated he wanted to relieve his conscience by giving the confessions and further stated he felt much better after giving the confession.
The trial judge's factual determinations are entitled to great weight and should not be disturbed unless clearly contrary to the evidence. State v. Bell, 395 So.2d 805 (La. 1981); State v. Vaccaro, 411 So.2d 415 (La.1982).
The record fully supports the trial judge's determination that the confession was voluntary and in full compliance with the requirements of LSA-R.S. 15:451.[1]
Also as part of this assignment the defendant contends that he did not possess the mental capacity to waive counsel. The court found otherwise, as is reflected by its statement in overruling the defendant's objection to the admissibility of the defendant's confession at trial. The court stated:

*204 Now as far as the form that you're showing, when the man was brought to me on June the 20th, I determined at that time that the man did understand what he was doing, and noted on the form that he intended to hire his own counsel. He was offered an attorney at that time, and the Court determined, made a determination that he did in fact understand what he was doing.
A review of the video tape clearly shows the defendant had the mental capacity to understand his rights and to intelligently waive them. The Miranda warnings and the waiver of rights are fully shown on the video confession.
When the issue in a case on appeal is whether a defendant's lack of intellectual ability precluded him from effectively understanding the essential nature of his constitutional rights, much weight is accorded the trial court's assessment. State v. Brogdon, 426 So.2d 158 (La.1983) rehearing denied 473 U.S. 921, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985); State v. Coleman, 395 So.2d 704 (La.1981). Moderate mental retardation or low intelligence does not vitiate a knowing and voluntary waiver of rights. State v. Thomas, 470 So.2d 413 (La.App.3d Cir.1985).
The record supports the trial judge's conclusion that the state carried its burden under LSA-R.S. 15:451 that the defendant's statements and confessions were freely and voluntarily made. This assignment lacks merit.
Assignments of Error No. 2 and 3
Defendant has combined these two assignments of error under one argument in his appellate brief. He contends that the trial court erred in admitting the testimony of Sheriff Fred Scott and Officer Morris regarding statements made by the co-defendant, Paul Tolbert, when Tolbert was available to testify. He relies on Louisiana Code of Evidence Art. 802 which provides that: "Hearsay is not admissible except as otherwise provided by this Code or other legislation." He argues that none of the hearsay exceptions enumerated in Louisiana Code of Evidence Art. 803 are applicable to the instant case and that the state's use of the officer's testimony regarding Paul Tolbert's statements was designed to deny defendant his right to cross-examine Paul Tolbert. He contends that the trial court's admission of this testimony over defense objections constitutes reversible error.
The record reveals that the defendant first raised a hearsay objection during the state's direct examination of Deputy Jimmy Morris. When Deputy Morris stated: "Mr. Tolbert told me ...". The defendant objected arguing that since Tolbert was incarcerated in a nearby jail and was willing and ready to testify, Tolbert's testimony was the best evidence of what Tolbert said. The defendant further argued that any testimony on the part of the officers regarding Paul Tolbert's statements was hearsay. The state countered with the argument that Paul Tolbert's statements were not being offered to prove the truth of the matter asserted but were being introduced to explain the actions taken by the officers as part of the investigation. The court agreed with the state and admitted the testimony, warning that the officer would not be permitted to give a blow-by-blow description of Tolbert's statements.
Deputy Morris's subsequent testimony regarding Tolbert's statements was admitted to show his further steps taken in the investigation established a factual basis for the search warrant of the defendant's residence.
Officer Morris testified from a search warrant affidavit prepared and signed by him as affiant. Included in this testimony was the following statement: "Paul Tolbert, Jr. stated that one Leonard Griffin, black male, did shoot and kill Roy L. Ray with a shotgun."
Sheriff Scott's testimony relating the statement he received from Tolbert was much more detailed than the information contained in the Morris account of the Tolbert statement. Scott's statement described the events that occurred between Tolbert, the defendant, and the victim as they were enroute to the murder scene and what occurred immediately before and at *205 the time of the murder. Included in Scott's testimony was the following information obtained from Tolbert's statement: "After they got back to the truck, Leonard Griffin turned and fired into the direction of Ray. Roy Ray fell to the ground, Leonard shot one additional time and kicked his feet, kicked Roy Ray's feet".
Hearsay evidence is in-court testimony, or written evidence of an out-of-court statement offered to show the truth of the matter asserted therein and resting for its value on the credibility of an out-of-court asserter. It is excluded based upon unreliability and the potential unfairness to the accused to permit introduction of statements which cannot be tested by cross-examining the out-of-court declarant. However, when a law enforcement officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, because they are not offered for the truth of the matter asserted, but merely to explain events leading to the arrest of the defendant. State v. Bazile, 386 So.2d 349 (La.1980).
The receipt of information by officers may be shown to explain their actions because it is not hearsay as it is not offered to prove the truth of the matter asserted. State v. Turner, 392 So.2d 436 (La.1981). However, the officer, in such circumstances, is limited to a statement that he took particular action in response to information received and he may not testify as to the conclusions of the informer. State v. Turner.
Testimony of the investigating officer of the content of a statement of an out-of-court declarant will be construed as objectionable hearsay if the witness testifies concerning the conclusion of the informer that the defendant was guilty of a crime. State v. Turner, supra; State v. Murphy, 309 So.2d 134 (La.1975). In Murphy the court held that it was proper for the witness to testify concerning the investigative procedure which he had followed but that it was not proper for the witness to testify concerning the conclusion of the informer that the defendant was guilty of the crime charged for the reason that this was pure hearsay. The court reversed the defendant's conviction because of the admission of the hearsay.
The testimony of Officer Morris and Sheriff Scott that Tolbert told them the defendant shot and killed Roy Ray was inadmissible hearsay offered to prove the guilt of the defendant and the objections to the hearsay should have been sustained.
The admission of the hearsay will require reversal of the conviction unless it can be determined beyond a reasonable doubt that it did not contribute to the guilty verdict. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); State v. Gibson, 391 So.2d 421 (La. 1980); State v. Lee, 524 So.2d 1176 (La. 1987). The defendant's confession can be considered in making the determination of whether or not the error in the admission of the hearsay is harmless. Schneble v. Florida, supra; State v. Simmons, 381 So.2d 803 (La.1980); State v. Lee, supra.
The defendant's exculpatory statement taken from him on June 19, 1985, which was 4 days after his arrest, and which he placed in evidence, admitted that the defendant was at the scene and saw the murder. He stated the victim was murdered by Tolbert with the defendant's .12 gauge shotgun. The state established that a .12 gauge shell hull found near the body of the victim was fired by the defendant's gun.
The defendant gave two admissible confessions on June 22, which were proven at trial. The defendant made an attempt to establish that the confessions were given by him because of fear created by his having been beaten by the officers about June 15. All the officers stated the defendant had not been mistreated and the trial court found the confessions to have been voluntary. The evidence supports the trial judge's rejection of the defendant's testimony. The defendant gave one confession in Alexandria, La. about noon on June 22. He maintained his innocence until this confession was given. He was carried to Alexandria for the purpose of submitting to a *206 polygraph test. Before the test was given the defendant announced to the polygraph examiner that his conscience was bothering him and he wanted to make a confession of the crime. The confession was placed on a video tape. The tape reflects with clarity the attitude of the defendant about the crime and his desire to escape the mental burden that his guilt was placing upon him. After the confession was fully taped the defendant asserted that his conscience was relieved and that he felt better after making his confession.
Upon the defendant's return to Tensas Parish in the late afternoon on June 22, he again confessed to killing the victim. This oral confession was related to Sheriff Scott. The defendant showed Scott how he performed the murder.
The jury viewed the video tape of the defendant's Alexandria confession. We viewed this tape and know the jury was certainly impressed by the sincerity of the defendant in desiring to give his confession and in the defendant's declaration following the confession that he felt better. The video reflected that the defendant was treated very nice by the interrogator who explained in detail the defendant's rights and made certain the defendant understood and waived them. The confession was complete in detail and the jury could understand the planning of the murder by the defendant and Tolbert. The jury could understand the actual execution of the murder by the defendant. The recordation on the video tape of the confession, Miranda warnings, waivers, and the conduct of the defendant before and after the confession enhanced to a great extent the quality of the evidence as viewed by the jury. This video confession, the oral confession given by the defendant to Sheriff Scott along with the defendant's ownership of the murder weapon and his admissions of being at the scene of the murder which he made before the confessions were taken all establish a vast amount of evidence of the defendant's guilt. This evidence was all admissible. We conclude that beyond a reasonable doubt that the inadmissible hearsay did not contribute to the guilty verdict. There is no reasonable possibility that the introduction of Tolbert's statement of the defendant's guilt contributed to the conviction. This evidence was harmless beyond a reasonable doubt and does not require reversal of the defendant's conviction.
These assignments of error have no merit.
THE CONVICTION IS AFFIRMED.
NOTES
[1] LSA-R.S. 15:451. Before what purposes (purports) to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats inducements or promises.