606 So.2d 824 (1992)
STATE of Louisiana, Appellee,
v.
Tony PLATER, Appellant.
No. 23964-KA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*825 Carey J. Ellis, III, Rayville, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., Rayville, Johnny R. Boothe, Asst. Dist. Atty., Winnsboro, for appellee.
Before MARVIN, HIGHTOWER and STEWART, JJ.
MARVIN, Chief Judge.
Tony Plater appeals his conviction by jury of second degree murder of his girlfriend, Diane Harris, whom he strangled with a belt. In two assignments of error, he challenges the trial court's rulings on objections to evidence.
Plater admitted to police that he had placed the belt around Harris's neck and *826 tightened it "a little bit," but claimed he did not intend to kill her. Plater had cut Harris with a knife about a month before her death, requiring over 30 stitches in her shoulder. After giving notice of its intent to use this earlier incident as other crimes evidence to prove the specific intent element of second degree murder, the State introduced testimony about the incident from several witnesses.
Plater did not complain of this testimony as other crimes evidence per se, but objected on the grounds of hearsay. Over Plater's hearsay objection, the court allowed two deputies who spoke with Harris after she was cut with the knife to relate her account of that incident. Plater also objected when one of the deputies was allowed to show the jury the knife that he obtained from Plater after Harris was cut. The knife was not offered or introduced as an exhibit.
We affirm.

FACTS
Plater and Harris lived together in Wisner, in the home of Harris's mother, Juanita Heard, for about a year before Plater was arrested for aggravated battery for the cutting incident on October 28, 1990. After making bail before Thanksgiving, Plater choked Harris to death on November 26, 1990, the Monday following.
Mrs. Heard went to Baton Rouge for the Thanksgiving holidays, telling Harris that she did not want Plater in the house while she was gone. When Mrs. Heard returned home about 6:00 p.m. on the fatal day, Plater ran out the back door while Harris met her mother at the front door. Harris told her mother that Plater, who was outside, was asking her permission to move back into her home. Going outside to face Plater, Mrs. Heard told Plater no, saying he had hurt her by cutting her daughter.
Within about 30 minutes Plater and Harris departed, walking from Mrs. Heard's home. Harris was headed to a nearby grocery store to buy lunch meat to take to work the next day. After going to a friend's home to seek a cigarette, Plater caught up with Harris a few minutes later, before she reached the store. Together they walked on a trail through a low-lying area of grass and bushes called "the sink," where Harris's body was later found.
The only account of what happened in "the sink" was related by Plater to police. According to Plater, Harris asked him for $20; he asked what he would get in return; she offered to have sex with him; he told her he had no money on him at the time but would give her $20 the next day; she laid on the ground and took her clothes off; he tried to have sex with her but could not maintain an erection; he told her to put her clothes back on, which she did. Plater said he then grabbed Harris around the neck with his arm, forced her to lie down again in "the weeds," took his belt off and put it around her neck, tightened the belt "a little bit," and then realized she was dead. Plater took his belt and left the scene without telling anyone what had happened. In his statement, Plater said he did not mean to kill Harris and that he "probably choked too hard" with the belt.
Four days later, after being unable to locate her daughter with friends or relatives, Mrs. Heard reported Harris missing and told police that Plater was with Harris when she was last seen. After initially denying any knowledge of what had happened to her, Plater eventually told police about the killing and led them to her body. An autopsy was done and showed the cause of death to be strangulation with a binding object. The coroner found several closed head injuries, as well as scrapes and abrasions on Harris's arms and her ankle, indicating that she had struggled for her life.
The critical issue for the jury was whether Plater was guilty of second degree murder or manslaughter. Plater did not testify. To prove that Plater killed Harris, the State introduced his statement to police. To prove specific intent, the State introduced the other crimes evidence, which we have mentioned above.
Plater's counsel argued to the jury that the killing constituted manslaughter because Harris angered Plater by asking him *827 to pay for sex after the two had lived together for a year and humiliated Plater by laughing at him when he was unable to perform sexually. Plater's account to police of what happened did not mention Harris laughing at him or otherwise provoking him. In his statement, Plater said that Harris asked him for $20 and said nothing about having sex until Plater asked her what he would get in return. According to Plater, Harris said only, "Well, O.K. then," when he told her to put her clothes back on after he attempted to have sex with her. The officer who took the statement testified that he asked Plater whether he and Harris had had a fight or an argument and Plater said they had not.
The evidence was legally sufficient to convict. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). LRS 15:271.

OTHER CRIMES EVIDENCE
Evidence of other crimes committed by the accused may be admissible to prove his intent to commit the crime charged if intent is a genuinely contested issue at trial, for reasons other than the mere fact of a not guilty plea, and if the probative value of the evidence outweighs its prejudicial effect. LCE Arts. 404(B)(1), 403; State v. Prieur, 277 So.2d 126 (La.1973); State v. Moore, 278 So.2d 781 (La.1973) (on rehearing).
Due process requires the State to give pre-trial notice of its intent to use evidence of other crimes. State v. Prieur, supra. The State must prove by clear and convincing evidence that the defendant committed the other crimes. State v. Davis, 449 So.2d 466 (La.1984). See LCE Art. 1103.
As a prerequisite to the admission of other crimes evidence, Prieur requires the State to show that the evidence is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant as a person of bad character, and serves the actual purpose for which it is offered. Prieur additionally requires that the jury be charged that the evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge. 277 So.2d at 130.
The State gave pre-trial notice of its intent to use evidence that Plater cut Harris with a knife about a month before her death. At trial, the State introduced evidence of that crime as well as evidence that Plater hit Harris on her head and hands with a knife about seven weeks before her death. Plater's trial counsel did not object to the evidence of the earlier crime based on lack of notice. Plater's appellate counsel does not assign lack of notice as error on appeal, and states in brief that "notice of other crimes was apparently given." Under these circumstances, Plater has waived any complaint as to lack of notice of the earlier hitting incident. CCrP Arts. 841, 920. See and compare State v. Chenier, 343 So.2d 177 (La.1977).
In his appellate brief, Plater argues for the first time that the other crimes evidence should not have been admitted because there was no prerequisite determination of its admissibility and because the jury was not charged as to the limited purpose for which the other crimes evidence was received. While the record is indeed lacking in these respects, Plater did not object to the evidence or to the jury charge on these grounds at trial or raise these claims in his assignments of error. These matters are not errors patent. We do not review the issues raised only in Plater's brief simply because he did not preserve them for review on appeal. CCrP Arts. 801, 841, 920; State v. Triplett, 285 So.2d 532 (La.1973); State v. Caston, 561 So.2d 941 (La.App.2d Cir.1990); State v. Moore, 498 So.2d 82 (La.App. 5th Cir.1986). Compare State v. Salone, 605 So.2d 229 (La.App. 2d Cir.1992).

HEARSAY EVIDENCE
In his first assignment of error, Plater claims the trial court erred by allowing the State, over defense counsel's objection, to *828 introduce hearsay testimony of peace officers relating statements of the victim under the guise of other crimes evidence.
These objections were made during the testimony of sheriff's deputies Dalton Ulmer and Tim Rogers, who investigated the cutting incident on October 28, 1990. Before the deputies testified, the victim's mother, Mrs. Heard, had testified, without objection, that Plater had cut Harris with a knife about a month before her death, requiring over 30 stitches in her shoulder.
Deputy Ulmer spoke with Harris in the hospital emergency room before her wounds were stitched. He testified:
I talked to her for approximately ten to fifteen minutes. She, at first she didn't want to tell me what happened. She kept saying that "If I tell, if I tell you what happened, well he'll kill me." And I told her, I said, "Well, you don't have to worry about that, ... this is all confidential. What you tell me will be kept just between us." And, uh, when I finally convinced her that, you know, in case she told me what happened that we'd take care of the problem whatever it was, and she wouldn't have to worry about it, and she finally told me....
[DEFENSE COUNSEL]: Your Honor, I'm going to object to any further testimony about what she told the officer, blatant hearsay.
[PROSECUTOR]: Your Honor, we had given ... notice that we intend to use this evidence. I believe I gave him the information, what we intended to produce and the reason for the other crimes evidence is to show motive, intent, system and knowledge, especially intent because intent is the primary focus of this entire proceeding, whether or not he intended to kill this particular person and certainly other prior acts ... go to show that intent.
[DEFENSE COUNSEL]: Your Honor, I haven't objected to any evidence regarding acts. We're talking about hearsay. Goes against the basic (inaudible) of the rule against hearsay.
[PROSECUTOR]: ... this is a fact gathering procedure by this officer and he was investigating this crime. Obviously we can't put the witness on because she's deceased and this is the only way we're going to be able to prove this.
[DEFENSE COUNSEL]: Your Honor....
[THE COURT]: I think [the prosecutor is] correct ... that's [LCE Art.] 803, I can't tell you the exact exception but I believe he is correct.
[DEFENSE COUNSEL]: I ask the record to note my objection.
The basis for Plater's objection that the evidence was inadmissible was clearly not that the evidence concerned another crime, as Plater appears to argue in his appellate brief, but that the deputy's account of what the victim told him about the other crime, particularly her identification of Plater as the person who cut her, constituted hearsay.
A new basis for an objection cannot be raised for the first time on appeal. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied. Although Plater has briefed the issue under the law applicable to other crimes evidence, we limit our review to the hearsay issue, which is stated as the basis for Plater's objection at trial and in his first assignment of error.
The fact that Harris made the statement to Deputy Ulmer in the course of his investigation of the crime does not, of itself, make the evidence admissible over a hearsay objection. The testimony of a law enforcement officer that he took particular action in response to information received from an out-of-court declarant during his investigation will not be considered hearsay because it is not offered for the truth of the matter asserted, but merely to explain the events leading to the defendant's arrest. State v. Griffin, 568 So.2d 198 (La. App. 2d Cir.1990), writ denied.
The officer may not, however, relate the out-of-court declarant's conclusion that the defendant was guilty of a crime; this constitutes hearsay and is not rendered admissible simply because the declarant made the statement to the investigating officer. LCE Arts. 801(C), 802; State v. Griffin, *829 supra; State v. White, 559 So.2d 541 (La. App. 2d Cir.1990).
Deputy Ulmer's testimony was not offered to explain his actions, but to relate Harris's statement that Plater cut her after the two argued over a pack of cigarettes. Under these circumstances, the testimony was hearsay and was inadmissible unless within the hearsay exceptions in LCE Arts. 803 and 804.
The exceptions in Art. 803 apply without regard to the declarant's availability to testify. Art. 804 gives additional exceptions that apply if the declarant is unavailable, as Harris was. Harris's statement does not fit within any of the 804 exceptions (former testimony, statement under belief of impending death, statement against interest, statement of personal or family history, records of regularly conducted business activity), and was not admissible under that article even though Harris was deceased. The statement does, however, fit under the excited utterance exception in Art. 803.
The Code of Evidence defines an excited utterance as a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. Art. 803(2). Although the record does not show the time of Harris's statement to Deputy Ulmer in relation to the time of the cutting, Ulmer testified that Harris was in severe pain and her wounds had been cleaned but not stitched when he spoke with her in the emergency room of the Franklin Parish Hospital in Winnsboro. The wounds were inflicted near the post office in Wisner. Plater and Harris had asked a Mr. Salsbury for a ride home when he drove past the post office after Harris was cut, but Salsbury brought them to the hospital when he saw how badly Harris was bleeding.
Under these circumstances, Harris's statement to Ulmer was admissible as an excited utterance under Art. 803(2). See also State v. Reaves, 569 So.2d 650 (La. App. 2d Cir.1990), writ denied. We do not draw the same conclusion with respect to the testimony of Deputy Rogers, discussed hereafter.
Defense counsel made another hearsay objection when Deputy Rogers was asked to relate Harris's "side of the story" about being cut. The court overruled the objection, saying, "They can testify as to what they learned in their investigation but we're not going to go beyond that." Rogers testified that Harris told her that she and Plater had gotten into an argument while walking near the Wisner post office and that Plater pulled out a knife and cut her with it.
Because Rogers related Harris's conclusion that Plater was guilty of a crime, his testimony was hearsay and was not admissible simply because the statement was made to him in the course of a criminal investigation. State v. Griffin, supra.
Rogers testified that he did not "get the story" from Harris at the hospital, as did Ulmer, but only at some later time, not otherwise specified in the record, when Harris came to the sheriff's office, after she had received medical treatment and had told Ulmer about the incident in the hospital emergency room.
Under these circumstances, Harris's statement to Rogers cannot be said to have been made "while the declarant was under the stress of excitement caused by the [startling] event or condition," and does not fall under the excited utterance exception to the hearsay rule. Art. 803(2); State v. Reaves, supra.
Assuming, but not finding, that this testimony was inadmissible hearsay, we nevertheless find no reversible error because of the earlier testimony by other witnesses identifying Plater as the person who had cut Harris. Mrs. Heard testified to this without objection. Deputy Ulmer related Harris's account of the incident over Plater's hearsay objection, which we have found was correctly overruled.
Additionally, Ulmer and Rogers testified, without objection, that Plater admitted to them that he had cut Harris and gave substantially the same account of the incident as Harris's except that Plater claimed *830 Harris also had a knife. The deputies said they looked for but did not find a knife in the area where Plater said Harris had thrown it. Plater's statement, an admission offered against him, is among the "statements which are not hearsay" listed in LCE Art. 801(D). See Art. 801(D)(2)(a). See also and compare State v. Nance, 469 So.2d 1045 (La.App. 2d Cir.1985).
On this record, we conclude that the admission of Rogers' testimony relating Harris's account of the cutting incident did not prejudice Plater or contribute to the jury verdict. The court's error, if any, in admitting this testimony over Plater's hearsay objection was harmless beyond a reasonable doubt. CCrP Art. 921. See and compare State v. Reaves and State v. White, both cited supra.

PRODUCTION OF KNIFE
Deputy Ulmer testified that while he was investigating the cutting incident, he accompanied Plater to a car to retrieve the knife that Plater said he used to cut Harris. Ulmer turned the knife over to Rogers, who produced it at trial after the court overruled Plater's objection that the knife was
overkill, it's irrelevant to the charge before the jury. [The prosecutor] is ... trying to convict the defendant of a knife fight that has nothing to do with the charges that are brought ... against the defendant at this time.
[PROSECUTOR]: Your Honor, I think it's all a part of our purpose in showing intent. One of the ways to show intent is his prior acts and one of the ways to show a prior act is to show the instrument he used to hurt this ... victim.
[THE COURT]: Have you given notice?
[PROSECUTOR]: Yes sir, I described the knife and everything.
[THE COURT]: All right, go ahead.
Plater again objected and was overruled when Rogers was asked to describe the knife. Rogers said, "It was a lock blade pocket knife, brown handled, it was an old timer, I would say probably eight, maybe nine inches long. The point had been broken off the knife and resharpened back on it.... the knife did have blood on it, on the blade." The knife was not introduced in evidence as an exhibit.
In his second assignment of error, Plater contends that Rogers should not have been allowed to show and comment on "a knife `allegedly' used by the defendant in a knife fight supposedly occurring prior to these proceedings in an altercation with the deceased/victim."
The knife was produced only after several witnesses testified about the cutting incident, either without objection or subject to the objections we have already discussed. Plater did not object to the testimony of Ulmer and Rogers relating Plater's admission that he had cut Harris with a knife, or to Ulmer's testimony that Plater turned the knife over to him after retrieving it from under a car seat.
We find no abuse of discretion in the trial court's implicit findings that the knife was relevant as part of the other crimes evidence that was introduced to prove Plater's specific intent to kill or inflict great bodily harm when he strangled Harris with his belt a month later, and that Plater was not unduly and unfairly prejudiced by Rogers' production and description of the knife. LCE Arts. 401-403. See and compare State v. Daigle, 440 So.2d 230 (La.App. 3d Cir.1983), writ denied, and State v. Miles, 402 So.2d 644 (La.1981).

ART. 930.8 NOTICE
CCrP Art. 930.8(C) requires the trial court to inform the defendant of the prescriptive period for post-conviction relief at the time of sentencing. The trial court did not do so here. This inconsequential error is not grounds to vacate Plater's mandatory life sentence or remand the case for resentencing. The article simply provides that the three-year period for instituting PCR does not begin to run until the judgment appealed is final. Arts. 921, 922, 930.8(A).
The trial court is directed to comply with Art. 930.8 by sending appropriate written notice to Plater within ten days after this opinion is rendered and by filing written *831 proof that Plater received the notice in the record of the proceedings. State v. Scott, 600 So.2d 756 (La.App. 2d Cir.1992).
CONVICTION AFFIRMED. ART. 930.8 NOTICE ORDERED.